UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| **THE DEP'T OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT,** on behalf of all others similarly situated, </br></br>Plaintiffs,</br></br>vs.</br></br>**CLIFFS NATURAL RESOURCES, INC.,** et al.,</br></br>Defendants. | ) CASE NO. 1:14 CV 1031</br>)</br>)</br>) **JUDGE DAN AARON POLSTER**</br>)</br>)</br>) **ORDER**</br>)</br>)</br>)</br>)</br>)</br>) |

This is a federal securities class action brought on behalf of purchasers of publicly traded stock of Defendant Cliffs Natural Resources, Inc. ("Cliffs") between March 14, 2012 and March 26, 2013 ("the Class Period"). Specifically, the claims are alleged against Cliffs and certain of its former and current executives[1] and arise under Sections 10(b) and 20(a) of the Private Securities Litigation Reform Act ("PSLRA") and Rule 10b-5 promulgated thereunder. The case is presently before the Court on Defendants' Motion to Dismiss the Amended Class Action Complaint (**Doc #: 32**); and Defendants' Motion Pursuant to Fed.R.Civ.P. 12(f) to Strike Certain Allegations from the Amended Class Action Complaint ("Motion to Strike") (**Doc #: 39**). For the following reasons, the Court directs Lead Plaintiff to file an amended complaint consistent with this opinion.

---

[1]The individual defendants are Joseph Carrabba (Cliffs' former Chief Executive Officer), Laurie Brlas (Cliffs' former Chief Financial Officer), David Blake (Cliffs' former Chief Operating Officer), and Terry Paradie (Cliffs' Chief Financial Officer).

**I.**

Defendant Cliffs is an international mining and natural resources company founded in 1847 and headquartered in Cleveland that derives its revenue from producing and selling iron ore and coal. Its business is divided among several segments, including U.S. Iron Ore, Eastern Canadian Iron Ore, Asia Pacific Iron Ore, North American Coal, Latin American Iron Ore, Ferroalloys and the Global Exploration Group.

In May 2011, Cliffs acquired a 75% interest in Bloom Lake, an iron ore mine in Quebec, Canada, when it acquired Consolidated Thompson Iron Mines Limited. Cliffs paid nearly $5 billion to acquire Consolidated Thompson whose principal asset was its interest in Bloom Lake. The purchase of Bloom Lake included the mine, the equipment for extracting the ore, a plant for refining the raw ore into saleable iron concentrate, and a transportation infrastructure including a rail line for collecting and shipping the iron concentrate to a port facility for shipment to customers.

Following the acquisition, Cliffs announced a three-phase plan to take over the development of Bloom Lake to make it into a more productive and less costly operation. The goal of Phase I was to ramp up Bloom Lake's iron ore production to 8 million tons per year during the first half of 2012 while reducing production costs to $60/ton. Phase II called for doubling the annual production at Bloom Lake to 16 million tons of iron ore – a $525 million project that would be completed in 2014 and funded from the increased ore production and decreased production costs generated by Phase I. Phase III involved opening up a second pit to the west of the main pit that would mirror that pit, requiring approximately $600 million in

capital expenditures with an expected increase in production of 24 million tons in the 2015-2016 time frame.

Within months after Cliffs acquired Bloom Lake, however, several things happened that severely dimmed its prospects. Cliffs switched from long-term fixed price contracts to spot pricing, which would be lucrative so long as the price of iron ore continued to rise. Beginning in the latter half of 2011, however, iron ore prices began to fall. Moreover, production at Bloom Lake hit numerous obstacles that lowered production estimates and increased production costs. For example, the silica content in the ore was much higher than expected, causing problems on the production line and leading to an extraordinary and unprecedented number of shutdowns.[2] And the rail infrastructure was unable to support the current production of ore, let alone the anticipated production – leaving piles of ore sitting on the ground near the track.

Against this background, Cliffs announced on March 13, 2012 that it was increasing its quarterly dividend 123%. Plaintiff alleges that, prior to the dividend increase, Cliffs' dividend was lower than that of its mining peers, and the company and individual defendants were under pressure to keep up with the investment performance of comparable companies in the mining industry. According to Plaintiff, Cliffs' decision to increase the dividend was done not only to allay the market's concerns regarding the $5 billion purchase price of Bloom Lake and declining iron ore prices, but to bring the company in line with its mining peers so that Cliffs could both retain and attract investors. The dividend increase immediately put Cliffs near the top 10% of all companies in the S&P 500 Index in terms of dividend yield. During a conference call the next

---

[2]Plaintiff asserts that the Bloom Lake facility suffered 45 shutdowns in the first three months of 2012 – more than double the most shutdowns of that facility in any previous year (20).

day, Defendant Carrabba directly linked the dividend increase to "tremendous growth." He noted that the expansion in Eastern Canada allowed the company to "increasingly return large amounts of capital to shareholders." Defendant Brlas stated that the dividend was "sustainable at varying commodities prices," and that the dividend was "extremely sustainable and tested under a wide variety of ore pricing scenarios over the coming years."

Less than a year later, however, Cliffs decreased the dividend 76%, and the stock price dropped precipitously. On July 9, 2013, Cliffs announced that Defendant Carrabba, who was Chairman of the Board, President and CEO, had resigned as Chairman of the Board – and that Defendant Brlas had resigned and left the company. On August 21, 2013, Cliffs announced that Defendant Blake would resign effective October 31, 2013. On November 15, 2013, Carrabba retired as President and CEO of the company. Cliffs later closed its operations at Bloom Lake, which is now insolvent and involved in restructuring proceedings in Canada.

Lead Plaintiff alleges that the individual defendants misrepresented to its then-current and prospective investors that Bloom Lake was a premium asset given its established rail and port infrastructure and fantastic facilities, and misled its then-current and prospective investors about the sustainability of the increased dividend. As a result, Cliffs stock traded at artificially inflated prices during the class period. At the same time, Defendants were aware of, but failed to disclose, systemic problems with Bloom Lake's facilities that caused massive cost overruns and serious production issues – the sum of which made it impossible for Cliffs to produce the amount of iron ore it touted at the costs it touted or to maintain the increased dividend. Plaintiffs assert that these misrepresentations and/or omissions constitute securities fraud under the PSLRA.

Defendants filed the pending Rule 12(b)(6) motion to dismiss, arguing that the anonymous witness statements are entitled to no weight, all of the claims alleged are impermissible "fraud by hindsight," the complaint fails to adequately allege facts giving rise to a strong inference of scienter, and most of the individual defendants' statements were merely forward-looking projections protected by the PSLRA's safe-harbor provision.  Additionally, Defendants have filed a Rule 12(f) motion to strike the allegations of 3 of Plaintiff's 28 confidential witnesses, whose statements have been recently been discredited by their authors.

## II.

"To state a securities fraud claim under Section 10(b), a plaintiff 'must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011) (citing *Frank v. Dana Corp.*, 547 F.3d 564, 569, in turn quoting *In re Comshare Inc. Sec. Litig.* 183 F.3d 542, 550(6th Cir. 1999)).  As to the scienter requirement, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. at 958-59 (quoting *Konkol v. Diebold, Inc*., 590 F.3d 390, 396 (6th Cir. 2009), in turn citing 15 U.S.C. § 78u-4(b)(2)).  Scienter may take the form of "recklessness" as well as "the knowing and deliberate intent to manipulate, deceive or defraud." *Id*. Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care.  While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Id*. at 959 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004), in turn quoting *Mansbach v. Prescott, Ball &*

*Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)). The Supreme Court recently articulated three steps a district court must follow when faced with a Rule 12(b)(6) motion in the PSLRA setting. *See Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 322-24 (2007).

> First, all of the plaintiff's factual allegations must be accepted as true. *Id*. at 322, . . .. Second, the complaint and other sources normally considered by a court when ruling on a 12(b)(6) motion must be considered in their entirety, including "documents incorporated into the complaint by reference, and matter of which a court may take judicial notice." *Id*. "The inquiry . . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation scrutinized in isolation, meets that standard." *Id*. at 322-23, . . .. Third, "the court must take into account plausible opposing inferences" when determining whether there is a strong inference of scienter." *Id*. at 323, . . .. "A complaint will survive [a 12(b)(6) motion] only if a reasonable person would deem the inference cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324, . . ..

*Frank*, 646 F.3d at 959 (parallel citations omitted).

### III.

In analyzing the Amended Complaint with regard to the pending motions, the Court has been forced to wade through a pleading that contains 436 paragraphs and is 133 pages long. The Amended Complaint is repetitive and just plain rambles. The Court itself has created more than one chart in an effort to organize Plaintiff's allegations to see if it can survive the pending motions. Of particular note is the Court's difficulty finding allegations showing <u>scienter</u> as to <u>each individual defendant</u>. This is a significant hurdle given case law in the Sixth Circuit. And it is insufficient, as the Amended Complaint does, to repeatedly reference "defendants" as there is no such thing as "group scienter."

Accordingly, the Court hereby **DIRECTS** Lead Plaintiff to file, **no later than the close of business on Tuesday, March 31, 2015**, an amended complaint **no longer than 50 pages in length** that concisely contains the following:

1)       the specific statements or representations that each of the four individual defendants made that Plaintiff claims were false, misleading or reckless; and

2)       the facts, specific to each individual defendant, showing scienter; i.e., that the particular Defendant knew that what he or she said was false, misleading or reckless.

As Plaintiff will be reorganizing its allegations in a new complaint, the Court invites Plaintiff to include a chart showing these two items. Furthermore, the Court **DIRECTS** Plaintiff to reevaluate its confidential witnesses and their statements, and to exclude any witnesses who lack firsthand knowledge about the facts they purport to know. Plaintiff shall also show how it is that the individual defendants had knowledge of those facts the confidential witnesses purport to know.

As a result of this Order, the pending motions (**Doc ##: 32 and 39**) are **denied as moot**.

**IT IS SO ORDERED.**

                                                     */s/ Dan A. Polster    March 5, 2015*
                                                     **Dan Aaron Polster**
                                                     **United States District Judge**