UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | |
|---|---|
| THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT, on behalf of itself and all others similarly situated,<br><br>Plaintiff,<br><br>v.<br><br>CLIFFS NATURAL RESOURCES INC., JOSEPH CARRABBA, LAURIE BRLAS, TERRY PARADIE, and DAVID B. BLAKE,<br><br>Defendants. | Case No. 1:14-cv-1031<br><br>Judge Dan Aaron Polster |

**LEAD PLAINTIFF'S SUR-REPLY IN FURTHER OPPOSITION
TO DEFENDANTS' MOTION UNDER RULE 12(f) TO STRIKE
CERTAIN ALLEGATIONS FROM THE SECOND AMENDED COMPLAINT**

## INTRODUCTION

Lead Plaintiff respectfully submits this Sur-Reply in response to Defendants' substantial reliance upon *In re Millennial Media, Inc. Sec. Lit.*, No. 14-7923, 2015 WL 3443918 (S.D.N.Y. May 29, 2015) ("*Millennial Media*"), which was raised for the first time in their Reply (ECF No. 75).[1] In *Millennial Media*, an out-of-circuit district court offered its own views in *dicta* on how to handle witness statements in pleadings. However, that decision goes well beyond the contours of the cases it relied on and all other existing precedent. Indeed, the *Millennial Media* court itself even acknowledged that it was "unaware of any case or ethics canon" supporting one of its primary conclusions. *Id.* at *13. *Millennial Media* has no application here, where the witness accounts in the SAC were reliable; there were no "red flags" as to the accuracy of the information provided; and the witnesses were provided with adequate information concerning the nature and purpose of their interviews, including notice that their statements could be used in a pleading. Finally, *Millennial Media* does nothing to alter the bedrock principle that fact and credibility questions cannot be decided at the pleading stage. *Millennial Media*'s unmoored and non-binding pronouncements should not alter the outcome on Defendants' Motion to Strike, which should be denied in its entirety.

## ARGUMENT

**First**, the holding in *Millennial Media* is *dicta,* not based on any controlling authority, and represents a significant departure from accepted practices for the handling of witness statements. To start, in *Millennial Media*, Judge Engelmayer of the Southern District of New York was faced with a situation where plaintiffs determined that the case should be voluntarily

---

[1] Unless otherwise indicated, all capitalized terms are defined as set forth in the Glossary of Terms in Lead Plaintiffs' Memorandum of Law In Opposition To Defendants' Motion to Strike Allegations form the Second Amended Class Action Complaint (ECF No. 72) ("Opp."), and all internal citations and quotations are omitted.

dismissed. After granting an unopposed voluntary dismissal without prejudice, the court issued an opinion, which directly acknowledged that it concerned "collateral matters" (*id.* at *1) and was commenting on certain issues that are "predominantly, not [issues] of law" (*id.* at *14). As a consequence of this unusual procedural posture, the *Millennial Media* is not appealable or subject to judicial review.

In this context, the court provided its thoughts concerning the process by which CW allegations might be confirmed. *Millennial Media* suggests that counsel might want to personally reconfirm every CW statement with the witnesses, and Defendants' urge this Court to retroactively impose that (misguided and unnecessary) process on Lead Plaintiff here. Yet the *Millennial Media* court's views on the verification process make little practical sense in this case, where there were no red flags that called into question the information provided by CWs..

**Second**, the principal authority cited in *Millennial Media* does not support its conclusion. In *City of Livonia Employees' Retirement System v. Boeing Co.,* No. 09-cv-7143, 2014 WL 4199136 (N.D. Ill. Aug. 21, 2014) ("*Boeing*"), a law firm was sanctioned for misrepresenting the statements of a CW who was the **sole source** for fraud allegations. *Millennial Media* at *11. But *Boeing* does not impose or even support a requirement that counsel must mechanistically reconfirm every CW statement in every context. Instead, *Boeing* indicates only that counsel should perform such reconfirmation when they cannot reasonably trust the accuracy of the CW information. *Boeing* at *6. Indeed, in *Boeing*, the crucial fact was that counsel failed to reconfirm statements from the complaint's single CW despite the fact that its own investigator had flagged internally that the CW's information was not reliable. *Id.* ("Knowing that some of the information [the CW] told the investigator was

unreliable, counsel should have attempted to corroborate the information instead of blindly relying on the investigator's report.").[2]

In contrast, the standard adopted in *Millennial Media* goes well beyond the procedural or verification requirements for CW allegations in *Boeing* or any other Court of Appeals decision. In fact, in the weeks since *Millennial Media* was issued, another court in the same district refused to adopt or address its holding in denying a motion to dismiss. *See In re Genworth Fin., Inc. Sec. Litig.*, Case No. 14-CV-02392 (AKH), ECF 52, at p. 43 (S.D.N.Y. June 5, 2015) (arguing in connection with motion to dismiss that "Judge Engelmayer's recent decision in [*Millennial Media*] . . . made a number of findings pertinent to the CW allegations" in *Genworth*), and ECF 53 (June 16, 2015) (order denying motion to dismiss, no application of *Millennial Media*).

Moreover, the procedures that Defendants now propose go *far beyond the steps that are involved in a criminal case*, where the stakes are significantly higher. For example, neither the United States Attorneys' Manual nor the Attorney General's Guidelines Regarding the Use of FBI Confidential Human Sources require a prosecutor to seek and obtain written, executed witness statements, inform a witness that his or her identity may be revealed in the course of an investigation, or show the written indictment to a witness for approval before presentation to the grand jury. Additionally, indictments are routinely issued on the basis of investigators' accounts of information provided to them by persons with relevant knowledge of the alleged crime.[3] It defies common sense that Defendants' proposed procedures for a civil securities

---

[2] *See also City of Livonia Emps.' Ret. Sys. v. Boeing Co.*, 711 F.3d 754, 762 (7th Cir. 2013) (noting that the investigator's "qualms" about CW's "inconsisten[cies]" should have been "red flag to plaintiffs' lawyers.").

[3] The use of hearsay is commonplace in grand jury proceedings and indictments. *See, e.g., Costello v. United States*, 350 U.S. 359, 363 (1956) (valid indictment can be based solely on hearsay evidence); *see also United States Attorneys' Manual*, 9-11.232 ("As a general rule, it is proper to present hearsay to the grand jury.").

complaint be far more stringent than those applicable to a criminal indictment.[4]

**Third**, based on the *Millennial Media dicta*, Defendants complain about the process of incorporating information from witnesses into allegations in this case. As set forth in Lead Plaintiffs' prior briefing, the practices and basis for the allegations in the SAC comply with the law in this Circuit. Moreover, Defendants' Motion raises very little concern about the ***actual allegations*** in the SAC. Only a handful of the SAC's allegations are challenged, and Defendants do not meaningfully assert (nor could they) that the statements attributed to the witnesses were not actually made to Lead Counsel's investigators. (Opp. at 8-15.) Defendants seek to strike only 14 of the 168 paragraphs in the SAC, all of which are corroborated by Defendants' own admissions, other witnesses, or other facts.

Where, as here, Lead Counsel had a reasonable basis to trust the accuracy of the witness accounts, there is no need for the type of verification process urged by Defendants.[5] Indeed, the witness statements in the SAC were confirmed and corroborated by numerous facts learned during Lead Counsel's investigation, including by the accounts of multiple witnesses. (*See, e.g.,* Opp. at 8-15.)[6] In light of this consistent and coherent narrative, Lead

---

[4] This is especially true where, as here, a plaintiff is not required to plead *evidence*. *In re Cabletron Systems, Inc.,* 311 F.3d 11, 33 (1st Cir. 2002) ("[T]he rigorous standards for pleading securities fraud do not require a plaintiff to plead evidence."); *Freudenberg v. E*Trade Fin. Corp.*, 712 F.Supp.2d 171, 179 (S.D.N.Y. May 11, 2010) (same).

[5] It should be noted that, contrary to Defendants' suggestion (Reply at 1), the *Millennial Media* decision involved an investigation conducted by two law firms not appearing in this matter (Labaton Sucharow LLP and Cera LLP). *See, e.g., Millennial Media* at *3. Although serving as one of lead plaintiff's counsel in that case, BLB&G did not participate in the investigation and was not referenced in the *Millennial Media* opinion.

[6] Defendants wrongly suggest that there is no corroboration for CW7's statement concerning a lack of "rigor" in Cliffs' price modeling. (Reply at 14, n.14.) But the fact that Cliffs' price modeling for the dividend lacked "rigor" is amply confirmed by the undisputed fact that, within less than a year, Defendants increased Cliffs' dividend by a massive 123% and then, after assuring the public that it had been tested, cut it by an equally precipitous 76%. (SAC ¶¶ 3, 6.) Moreover, the SAC alleges, based on information provided by CW24, that Cliffs' did not have sufficient capabilities related to the quantitative modeling of iron prices. *See* ¶¶ 111-13. Defendants also ignore that CW7 ***admits*** that she made the "rigor" statement to Plaintiff's investigator – *see* CW7 #1 at ¶ 18 (admitting "I made comments to Plaintiff's Investigator about the 'rigor' of Cliffs'

Counsel had more than sufficient confirmation of the witness accounts in the SAC – and had a reasonable basis to trust the accuracy of the statements reported by its investigators.

*Boeing* is instructive on this point as well.  The court in *Boeing* expressly acknowledged that, in the absence of red flags of unreliability, "an attorney is certainly entitled to rely upon information obtained from others, including investigators." *Boeing* at *6.  These observations are particularly apt here, where the investigators collectively had decades of experience and impeccable qualifications, including in the law enforcement context.  (*See, e.g.,* Bitkower at ¶ 2; Landino at ¶ 2.)  Moreover, the most hotly contested witness, CW7, **did** speak to an attorney before any complaint was filed.  (Shikowitz at ¶¶ 5-7.)  The *Boeing* approach makes perfect sense and is broadly consistent with existing authority on the proper use and consideration of witness allegations in securities fraud complaints – where courts refuse to strike CW allegations based on out-of-court declarations, as discussed below.  (*See* Opp. at 2-5 (collecting cases).)  Moreover, it would be improper and unfair for *Millennial Media*'s other strictures to apply *post hoc* to a proper investigation primarily conducted years ago.

**Fourth**, the *Millennial Media* court's other main criticism – that, as a matter of "fairness," CWs should be notified that they might be cited in a complaint – can be swiftly rejected.  Notably, even the *Millennial Media* court admitted that it was "unaware of any case or ethics canon requiring" such notification.  *Millennial Media* at *13.  Here, the witnesses were provided with sufficient notice.  As explained in Lead Plaintiff's Opposition, each witness was provided with "an extensive disclosure before [the investigator sought] any

---

modeling") – but now disputes the ***inference*** to be drawn from her statement.  This is fatal to Defendants' Motion.

substantive information," including "the reason for [the] call . . .the name of the [subject] company . . . and the main allegations that BLB&G anticipates asserting against that company and/or any individuals." (Opp. at 7.)  For example, with CW2, Lead Plaintiff's investigator even confirmed in writing that a lawsuit may be filed against Cliffs, that information supplied by "people we had spoken with during the investigation" may be "relied upon in drafting our complaint," and that the names of such people may have to be disclosed. (*Id.*; *see also* Landino, at Ex. C.)[7]  Defendants do not even attempt to address these points in their Reply.

**Finally**, the law is clear and remains unchanged:  the issues of fact and credibility arguably raised by Defendants' witness declarations cannot be determined at the pleading stage. (Opp. at 4-5.)  Defendants suggest that simply presenting the CW declarations during pre-discovery motion practice is sufficient to "test" them.  Defendants are wrong.  Lead Plaintiff has no access to documents and other discovery, and no ability to compel witnesses to appear and testify under oath.  Moreover, while Lead Counsel have been transparent about their interactions with the CWs, conspicuously absent from the record to date is information about Defense counsel's interactions with them.  The out-of-court declarations cannot, as Defendants suggest, be accepted as true "[r]ight now" (Reply at 4, n.3), at the pleading stage, as that would turn the Federal Rules of Civil Procedure on their head. Under the circumstances, full discovery on the merits is required to resolve the multiplicity of fact and credibility issues implicated here. And in light of the billions of dollars in losses suffered by the Class, and Lead Plaintiff's own $42 million loss, these misplaced concerns should not

---

[7] Other witnesses exchanged multiple emails with Lead Counsel's investigators through the investigators' work email addresses, including with links to BLB&G's website that has detailed information concerning the firm's practice areas, active and past cases, and personnel.  (*See* Burr (#2) Exs. B-D; Bitkower Exs. D-M, P, S-T.)

derail Lead Plaintiff's opportunity to obtain discovery and attempt to prove its case.[8]

## CONCLUSION

For the above reasons, as well as those set forth in Lead Plaintiff's opposition, Defendants' Motion should be denied.

DATED: June 18, 2015

/s/ *Scott D. Simpkins*
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile: (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Lead Plaintiff, the Department of the Treasury of the State of New Jersey and its Division of Investment*

---

[8] Further, the legitimacy of Defendants' entire Motion is belied by their insistence that this Court must "[r]ight now" disregard the obvious credibility and factual issues implicated here, accept untested, out-of-court statements by CWs, and grant Defendants' motion without full discovery on the merits. (*See* Reply at 4, n.3.)

Michael B. Himmel
Michael T.G. Long
Jamie R. Gottlieb
Joseph A. Fischetti
Brandon M. Fierro
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile:  (973) 597-2400
mhimmel@lowenstein.com
mlong@lowenstein.com
jgottlieb@lowenstein.com
jfischetti@lowenstein.com
bfierro@lowenstein.com

*Counsel for Lead Plaintiff, the Department of the Treasury of the State of New Jersey and its Division of Investment and Lead Counsel for the Class*

Gerald A. Silk
James A. Harrod
Jeremy P. Robinson
Rebecca E. Boon
Adam D. Hollander
**BERNSTEIN LITOWITZ BERGER
  & GROSSMANN LLP**
1285 Avenue of the Americas
New York, New York 10019
Telephone: (212) 554-1400
Facsimile:  (212) 554-1444
jerry@blbglaw.com
jim.harrod@blbglaw.com
jeremy@blbglaw.com
rebecca.boon@blbglaw.com
adam.hollander@blbglaw.com

## CERTIFICATE OF SERVICE

A copy of the foregoing was filed electronically this 18th day of June 2015.  Notice of this filing will be sent to all parties by operation of the Court's electronic filing system.  Parties may access this filing through the Court's system.

Dated:  June 18, 2015	/s/ *Scott D. Simpkins*
John R. Climaco (0011456)
Scott D. Simpkins (0066775)
**CLIMACO WILCOX PECA**
**TARANTINO & GAROFOLI CO., LPA**
55 Public Square, Suite 1950
Cleveland, Ohio 44113
Telephone: (216) 621-8484
Facsimile:  (216) 771-1632
jrclim@climacolaw.com
sdsimp@climacolaw.com

*Local Counsel for Lead Plaintiff*