**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| **THE DEP'T OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT, on behalf of all others similarly situated,** )<br>)<br>)<br>) | **CASE NO. 1:14 CV 1031** |
| ) | **JUDGE DAN AARON POLSTER** |
| **Plaintiffs,** )<br>) | |
| ) | **OPINION AND ORDER** |
| **vs.** )<br>) | |
| **CLIFFS NATURAL RESOURCES, INC., et al.,** )<br>)<br>) | |
| **Defendants.** ) | |

This is a federal securities class action brought on behalf of purchasers of publicly traded stock of Defendant Cliffs Natural Resources, Inc. ("Cliffs") between March 14, 2012 and March 26, 2013. Specifically, the claims are alleged against Cliffs and certain of its former and current executives[1] and arise under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder.

This case was previously before the Court on Defendants' Motion to Dismiss the Amended Class Action Complaint ("First Motion to Dismiss") (Doc #: 32), and Defendants' Motion Pursuant to Fed.R.Civ.P. 12(f) to Strike Certain Allegations from the Amended Class Action Complaint (Defendants' First Motion to Strike (Doc #: 39). In the First Motion to

---

[1] The individual Defendants are Joseph Carrabba (Cliffs' former Chief Executive Officer), Laurie Brlas (Cliffs' former Chief Financial Officer), David Blake (Cliffs' former Chief Operating Officer), and Terry Paradie (Cliffs' Chief Financial Officer).

Dismiss, Defendants argued that the anonymous confidential-witness statements were entitled to no weight, all of the allegations in the Amended Complaint consisted of impermissible "fraud by hindsight," the Amended Complaint failed to adequately allege facts giving rise to a strong inference of scienter, and most of the individual defendants' statements were merely forward-looking projects protected by the PSLRA's safe-harbor provision. (Doc #: 32.) The First Motion to Strike challenged the allegations of 3 of the 29 confidential witnesses, whose statements had been discredited by their authors. (Doc #: 39.)

On March 5, 2015, the Court issued an Order directing Lead Plaintiff, the Department of the Treasury of The State of New Jersey and its Division of Investment, which filed a 133-page complaint, to file an amended complaint no longer than 50 pages in length that concisely contained (1) the specific statements or representations that each of the individual Defendants made that Lead Plaintiff claimed were false, misleading or reckless, and (2) the facts, specific to each individual Defendant, showing scienter, i.e., that the particular Defendant knew that what he or she said was false, misleading or reckless. (Doc # 52 at 6-7.) The Court also suggested that Plaintiff include a chart showing these two items. And finally, the Court directed Lead Plaintiff to reevaluate its 29 confidential witnesses and their statements, and to exclude any witnesses who lacked firsthand knowledge about the facts they purported to know.

Lead Plaintiff filed a Second Amended Complaint ("SAC") that complied with the Court's page limitation, included the suggested attachment, and reduced the number of confidential witnesses from 29 to 19.

The case is now before the Court on Defendants' Motion to Dismiss the Second Amended Complaint ("Second Motion to Dismiss") (**Doc #: 66)**; Defendants' Motion Under

Rule 12(F) to Strike Certain Allegations from the Second Amended Complaint ("Second Motion to Strike") (**Doc #: 69**); and Defendants' Motion to Schedule Oral Argument on Motion to Dismiss and Motion to Strike (**Doc #: 81**). The Court has reviewed the motions to dismiss and to strike, the opposition briefs, the reply briefs and the sur-replies. Because those briefs were thorough and well-written, the Court does not need the benefit of oral argument. Accordingly, the Court **DENIES** Defendants' request for oral argument. (Doc #: **81**.)

### I.

### A.

Regarding the Second Motion to Dismiss, Defendants' arguments are the same as those articulated in the First Motion to Dismiss. That is, the SAC fails to adequately allege facts giving rise to a strong inference of scienter, most of the individual Defendants' statements were merely forward-looking projections protected by the PSLRA's safe-harbor provision, and the entire SAC rests on fraud-by-hindsight.[2]

"To state a securities fraud claim under Section 10(b), a plaintiff 'must allege, in connection with the purchase or sale of securities, the misstatement or omission of a material fact, made with scienter, upon which the plaintiff justifiably relied and which proximately caused the plaintiff's injury." *Frank v. Dana Corp.*, 646 F.3d 954, 958 (6th Cir. 2011) (citing

---

[2]Defendants also argue that the SAC fails to allege control-person liability under Section 20(a) of the Exchange Act. The Court notes that they have relegated this particular argument to a footnote in its Second Motion to Dismiss brief and never mention it in the reply brief:

> "Where, as here, "[P]laintiff[] do[es] not state a claim for primary securities law violation under Rule 10b-5, dismissal of a 'control person" liability claim under 15 U.S.C. § 78t(a) [Section 20(a)] is also proper. *Dailey*, 551 F.App'x at 849.

(Doc #: 66-1 at 30 n.38.)

*Frank v. Dana Corp.*, 547 F.3d 564, 569, in turn quoting *In re Comshare Inc. Sec. Lit.* 183 F.3d 542, 550(6th Cir. 1999)). As to the scienter requirement, the PSLRA requires plaintiffs to "state with particularity facts giving rise to a strong inference that the defendant acted with the required state of mind." *Id*. at 958-59 (quoting *Konkol v. Diebold, Inc.*, 590 F.3d 390, 396 (6th Cir. 2009), in turn citing 15 U.S.C. § 78u-4(b)(2)). Scienter may take the form of "recklessness" as well as "the knowing and deliberate intent to manipulate, deceive or defraud." *Id*. Recklessness is defined as "highly unreasonable conduct which is an extreme departure from the standards of ordinary care. While the danger need not be known, it must at least be so obvious that any reasonable man would have known of it." *Id*. at 959 (quoting *PR Diamonds, Inc. v. Chandler*, 364 F.3d 671, 681 (6th Cir. 2004), in turn quoting *Mansbach v. Prescott, Ball & Turben*, 598 F.2d 1017, 1025 (6th Cir. 1979)).

> The Supreme Court recently explained three steps a court must follow when faced with a 12(b)(6) motion in a section 10(b) action. *See Tellabs*,[3] 551 U.S. at 322-324, 127 S.Ct. 2499. First, all of the plaintiff's factual allegations must be accepted as true. *Id*. at 322, . . .. Second, the complaint and other sources normally considered by a court when ruling on a 12(b)(6) motion must be considered in their entirety, including "documents incorporated into the complaint by reference, and matters of which a court may take judicial notice." *Id*. "The inquiry . . . is whether all of the facts alleged, taken collectively, give rise to a strong inference of scienter, not whether any individual allegation scrutinized in isolation, meets that standard." *Id*. at 322-23, . . .. Third, "the court must take into account plausible opposing inferences" when determining whether there is a strong inference of scienter." *Id*. at 323, . . .. "A complaint will survive [a 12(b)(6) motion] only if a reasonable person would deem the inference cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id*. at 324, . . ..

*Frank*, 646 F.3d at 959 (parallel citations omitted). See also *Louisiana School Employees' Retirement System v. Ernst & Young, LLP*, 622 F.3d 471, 478-79 (6th Cir. 2010).

---

[3]The full cite is *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308 (2007).

**B.**

The Court incorporates by reference the Court's articulation of facts contained in its previous Order, which factual allegations must be accepted as true and considered collectively. (Doc #: 52 at 2-4.) In concisely reorganizing its allegations and preparing a chart connecting the individual Defendants to statements they made leading up to and during the Class Period, the SAC addresses most of the concerns raised by the Court in the prior opinion. Lead Plaintiff has alleged facts against each Defendant that meet the heightened pleading standard for securities fraud violations–and which, if proven, make out such violations.[4] In sum, the Bloom Lake acquisition was so disastrous to Cliffs, and the failure came so quickly, that an inference can be

---

[4]The Court is concerned with Defendants' argument that "[t]he Sixth Circuit and other courts routinely discount allegations about anonymous witnesses in deciding motions to dismiss under the PLRA." *Ley v. Visteon Corp.*, 543 F.3d 801, 811 (6th Cir. 2008) (CW allegations "must be discounted and usually that discount will be steep.")." This is a misrepresentation of *Ley*. The quotation does not actually come the Sixth Circuit in *Ley* but from a Seventh Circuit case, *Higgenbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 757 (7th Cir. 2007). In fact, nothing in *Ley* states that the Sixth Circuit steeply discounts CW allegations:

> While we agree that anonymous sources are not altogether irrelevant to the scienter analysis, Plaintiff's allegations here are too vague and conclusory to be accorded much weight. *See Higgenbotham v. Baxter Int'l Inc.*, 495 F.3d 753, 757 (7th Cir. 2007) (finding allegations of confidential witnesses must be discounted and "u]sually that discount willbe steep.") Indeed, Plaintiffs fail to allege who at Visteon knew about these alleged accounting improprieties and what, when, where, and how they knew. Without such context, we cannot say the statements raise an inference of scienter.

*Ley v. Visteon Corp.*, 543 F.3d 801, 811 (6th Cir. 2008), *abrogated on other grounds by Matrixx Initiatives, Inc. v. Siracusano*, 563 U.S. 27 (2011). Moreover, the Sixth Circuit's own citations to *Ley* belie Defendants' interpretation. For example, in *Ricker v. Zoo Entm't, Inc.*, the Sixth Circuit Court cited *Ley* for the much narrower proposition that "[w]hile ... anonymous sources are not altogether irrelevant to the scienter analysis, ***conclusory or vague allegations*** do not deserve much weight." 534 F. App'x 495, 497 n.2 (6th Cir. 2013) (emphasis added) (internal quotation marks and citations omitted). *See also Konkol v. Diebold, Inc.*, 590 F.3d 390, 399 (6th Cir. 2009) ("When confidential sources are used to support 'vague and conclusory' allegations, the allegations are not 'accorded much weight.'"), *abrogated on other grounds by Matrixx*, 563 U.S. 27 (2011). Contrary to Defendants' argument, *Ley* is inapposite as it addresses conclusory and vague allegations, not specific and factual allegations, as those made here.

drawn that Defendants were reckless in making the monumental increase in the dividend and publicly pronouncing that it was sustainable.

That said, the Court notes in passing that it does not believe that a jury will find the case as strong as Lead Plaintiff appears to think it is, nor is it as weak as Defendants make it out to be. If, as Plaintiffs contend, Defendants were motivated by a desire to retain their jobs, why would they announce a dividend increase they knew Cliffs could not sustain, and why would they hide negative information about Bloom Lake which they knew would be coming to light within a short period of time?  On the other hand, how could Defendants make such a big dividend increase and publicly pronounce it sustainable on such a speculative investment, why weren't Defendants more forthcoming about the problems at Bloom Lake, and why didn't they reduce the dividend sooner?

Accordingly, the Second Motion to Dismiss (**Doc #: 66**) is **DENIED**.

**II.**

In the Second Motion to Strike, Defendants seek to remedy material misstatements attributed to 4 of 19 confidential witnesses ("CWs").  According to Defendants, each of the 4 CWs has voluntarily provided "at least one signed declaration to make the record right, giving a first-hand account of how Plaintiff has misrepresented and distorted the information he/she provided." (Doc #: 69-1 at 3.)  Defendants ask the Court to strike certain of their allegations, as "it would help unclutter the Court's path to" granting their motion to dismiss.  (Id. at 2.) Furthermore, "the baseless allegations of fraudulent behavior by Defendants should also be stricken because they are scandalous under Rule 12(f)."  (Id. at 8.)

The Court "may strike from a pleading an insufficient defense or any redundant, immaterial, impertinent, or scandalous matter." Fed. R. Civ. P. 12(f). An "impertinent" allegation is one that bears no relationship to the claims asserted. See *New Day Farms, LLC v. Bd. of Trs.*, No. 08-1107, 2009 WL 1652126, at *3 (S.D. Ohio Jun. 10, 2009). A "scandalous" allegation "unnecessarily reflects on the moral character of an individual" or uses "repulsive language that detracts from the dignity of the court." *Id*. Courts should "proceed cautiously in considering a motion to strike," as they are "ill-equipped at the pleading stage to determine whether or not an allegation is false." *Hughes v. Lavender*, No. 2:10-674, 2011 WL 2945843, at *2 (S.D. Ohio Jul. 20, 2011).

Rule 12(f) motions are disfavored and granted only where the allegations are clearly immaterial to the subject matter of the litigation or would prejudice the movant. *Frisby v. Keith D. Weiner & Assocs. Co., LPA* 669 F.Supp.2d 863, 865 (N.D. Ohio 2009). See also 5C Charles Alan Wright & Arthur R. Miller, Federal Practice & Procedure § 1382 (3d ed. 2004) ("[T]here appears to be general judicial agreement . . . that [motions to strike] should be denied unless the challenged allegations have no possible relation or logical connection to the subject matter of the controversy and may cause some form of significant prejudice....") The high standard is only met when "the language is extreme or offensive." *Hughes*, 2011 WL 2945843, at *2.

To begin, none of the CWs' allegations are impertinent or scandalous, nor is their language extreme or offensive. As to Defendants' argument that alleging that a defendant committed securities fraud is "scandalous" (Doc #: 69-1 at 3), the Court finds that paying heed to that argument would lead to the curious result of dismissing nearly every complaint alleging fraud. In any event, the cases cited by Defendant (id.) are distinguishable. Furthermore, all of

-7-

the CWs' allegations relate to the subject matter of the litigation, i.e., what Defendants knew or a reasonable person would have known at the time Cliffs declared the dividend hike.

In any event, the issues of fact and credibility raised by Defendants' witness declarations cannot be determined at the pleading stage. *See, e.g., In re ProQuest Sec. Lit.*, 527 F.Supp.2d 728, 738, 740 (E.D. Mich. 2007); *Halford v. Atricure, Inc.*, No. 08-867, 2010 WL 8973625, at *3 (S.D. Ohio Mar. 29, 2010).[5]

Accordingly, the Second Motion to Strike (**Doc #: 69**) is **DENIED**.

### III.

The Court hereby **DIRECTS** counsel to confer and file, **no later than Monday, November 16, 2015**, a proposed agreed discovery schedule.

The Court also **DIRECTS** the parties to continue their mediation efforts with their private mediator.

**IT IS SO ORDERED.**

           /s/ Dan A. Polster    November 6, 2015
**Dan Aaron Polster**
**United States District Judge**

---

[5] With regard to *In re Millennial Media, Inc. Sec. Lit.*, No. 14-7923, 2015 WL 3443918 (S.D.N.Y. May 29, 2015), the Court notes that the district court's pronouncements are *dicta*, not followed by at least one other court in that district, have no precedential effect on this Court, and relate only to the facts of that case.