# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
## EASTERN DISTRICT

| | |
|---|---|
| THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT, on behalf of itself and all others similarly situated,<br><br>    Plaintiff,<br><br>  v.<br><br>CLIFFS NATURAL RESOURCES INC., JOSEPH CARRABBA, LAURIE BRLAS, TERRY PARADIE, and DAVID B. BLAKE,<br><br>    Defendants. | Case No. 1:14-cv-1031<br><br>Judge Dan Aaron Polster<br><br>Magistrate Judge Thomas M. Parker |

**REPLY MEMORANDUM IN FURTHER SUPPORT OF
(1) LEAD PLAINTIFF'S MOTION FOR FINAL APPROVAL OF
CLASS ACTION SETTLEMENT AND APPROVAL OF PLAN OF ALLOCATION;
AND (2) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS'
<u>FEES AND REIMBURSEMENT OF LITIGATION EXPENSES</u>**

**<u>TABLE OF CONTENTS</u>**

**Page**

TABLE OF AUTHORITIES ........................................................................................................ ii

PRELIMINARY STATEMENT ............................................................................................... 1

ARGUMENT ............................................................................................................................ 2

I.     THE OVERWHELMINGLY POSITIVE RESPONSE OF THE SETTLEMENT
CLASS STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN
OF ALLOCATION AND THE MOTION FOR ATTORNEYS' FEES AND
EXPENSES ................................................................................................................... 2

II.    THE BROWN OBJECTION IS WITHOUT MERIT ......................................................... 6

     A.     The Brown Objection Should be Viewed with Skepticism ...................................... 6

     B.     Mr. Brown's Grounds for Objecting to the Settlement are Baseless ........................ 7

     C.     Mr. Brown's Objection to the Plan of Allocation is Baseless ................................. 9

     D.     Mr. Brown's Objections to the Fee and Expense Application are Meritless ........... 10

CONCLUSION ......................................................................................................................... 14

# TABLE OF AUTHORITIES

Page(s)

**Cases**

*Alaska Elec. Pension Fund v. Flowserve Corp.*,
    572 F.3d 221 (5th Cir. 2009) ..............................................................................................11

*In re Am. Int'l. Grp., Inc. Sec. Litig.*,
    293 F.R.D. 459 (S.D.N.Y. 2013) .......................................................................................9, 10

*In re AOL Time Warner, Inc.*,
    No. MDL, 02 Civ. 5575 (SWK) 2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ....................4, 11

*In re Art Materials Antitrust Litig.*,
    100 F.R.D. 367 (N.D. Ohio 1983) .........................................................................................3

*In re AT&T Corp. Sec. Litig.*,
    455 F.3d 160 (3d Cir. 2006).....................................................................................................8

*In re AT&T Corp. Sec. Litig.*,
    MDL No. 1399, 2005 WL 6716404 (D.N.J. Apr. 25, 2005) ...................................................4

*In re Auto. Refinishing Paint Antitrust Litig.*,
    MDL No. 1426, 2008 WL 63269 (E.D. Pa. Jan. 3, 2008) .......................................................5

*In re BankAmerica Corp. Sec. Litig.*,
    210 F.R.D. 694 (E.D. Mo. 2002) ............................................................................................4

*In re Bisys Sec. Litig.*,
    No. 04 Civ. 3840 (JSR), 2007 WL 2049726 (S.D.N.Y. July 16, 2007) ..................................5

*Bowling v. Pfizer, Inc.*,
    102 F.3d 777 (6th Cir. 1996) ...........................................................................................12, 13

*In re Cardizem CD Antitrust Litig.*,
    218 F.R.D. 508 (E.D. Mich. 2003) .........................................................................................5

*In re Celestica, Inc. Sec. Litig.*,
    No. 1:07-cv-312-GBD-MHD, 2014 WL 4160216 (S.D.N.Y. August 20, 2014) ....................6

*In re Cendant Corp. Litig.*,
    264 F.3d 201 (3d Cir. 2001).....................................................................................................11

*In re Chipcom Corp. Sec. Litig.*,
    No. 95-11114-DPW, 1997 WL 1102329 (D. Mass. June 26, 1997)........................................9

*In re Citigroup Inc. Bond Litig.*,
   296 F.R.D. 147 (S.D.N.Y. 2013) ...................................................................4

*In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*,
   248 F.R.D. 483 (E.D. Mich. 2008) ..............................................................4, 5

*In re EVCI Career Colls. Holding Corp. Sec. Litig.*,
   No. 05 Civ. 10240 (CM), 2007 WL 2230177 (S.D.N.Y. July 27, 2007)................5

*Gascho v. Glob. Fitness Holdings, LLC*,
   No. 14-3761, 2016 WL 2802473 (6th Cir. May 13, 2016)............................12, 13

*Gilman v. Independence Blue Cross*,
   No. Civ.A. 96-1601, 1997 WL 633568 (E.D. Pa. Oct. 6, 1997)...........................9

*In re Global Crossing Sec. & ERISA Litig.*,
   225 F.R.D. 436 (S.D.N.Y. 2004) .................................................................11

*In re Initial Pub. Offering Sec. Litig.*,
   728 F. Supp. 2d 289 (S.D.N.Y. 2010)............................................................6

*Int'l Union v. Ford Motor Co.*,
   No. 05-74730, 2006 WL 1984363 (E.D. Mich. July 13, 2006), *aff'd*, 497 F.3d
   615 (6th Cir. 2007)....................................................................................4

*In re Lucent Techs., Inc., Sec. Litig.*,
   307 F. Supp. 2d 633 (D.N.J. 2004) ...............................................................5

*N. Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*,
   No. 14-11191, 2016 WL 2907968 (E.D. Mich. May 19, 2016) ...........................4

*In re NASDAQ Market-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ..................................................................8

*In re Nationwide Fin. Servs. Litig.*,
   No. 2:08-CV-00249, 2009 WL 8747486 (S.D. Ohio Aug. 19, 2009) ...................3

*New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*,
   234 F.R.D. 627 (W.D. Ky. 2006), *aff'd sub nom. Fidel v. Farley*, 534 F.3d
   508 (6th Cir. 2008)....................................................................................14

*O'Keefe v. Mercedes-Benz USA, LLC*,
   214 F.R.D. 266 (E.D. Pa. 2003).....................................................................6

*Olden v. Gardner*,
   294 F. App'x 210 (6th Cir. 2008) ..................................................................4

*In re Polyurethane Foam Antitrust Litig.*,
  No. 1:10 MD 2196, 2016 WL 320182 (N.D. Ohio Jan. 27, 2016), *appeal
  dismissed* (May 18, 2016) ...........................................................................................10

*Rawlings v. Prudential-Bache Properties, Inc.*,
  9 F.3d 513 (6th Cir. 1993) ......................................................................................12, 13

*In re Rite Aid Corp. Sec. Litig.*,
  396 F.3d 294 (3d Cir. 2005)........................................................................................5, 12

*In re Se. Milk Antitrust Litig.*,
  No. 2:07-CV- 208, 2013 WL 2155387 (E.D. Tenn. May 17, 2013) ...............................12, 13

*Shane Group., Inc. v. Blue Cross Blue Shield of Michigan*,
  Nos. 15-1544/1551/1552, 2016 WL 3163073 (6th Cir. June 7, 2016) ....................................13

*Shaw v. Toshiba Am. Info. Sys., Inc.*,
  91 F. Supp. 2d 942 (S.D. Tex. 2000) .....................................................................................7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  No. MDL 3:07-MD-1827 SI, 2011 WL 7575004 (N.D. Cal. Dec. 27, 2011) ..........................8

*Turabo Med. Ctr. v. Beach*,
  No. 96-2250 (DRD), 1997 WL 33810581 (D.P.R. Aug. 13, 1997)........................................9

*In re Tyco Int'l, Ltd. Multidistrict Litig.*,
  535 F. Supp. 2d 249 (D.N.H. 2007)........................................................................................4

*In re UnitedHealth Grp. Inc. PSLRA Litig.*,
  643 F. Supp. 2d 1107 (D. Minn. 2009)...................................................................................6

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005).......................................................................................................13

Lead Plaintiff and Lead Counsel respectfully submit this reply memorandum of law in further support of: (1) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation (ECF No. 102); and (2) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF No. 103).[1]

## PRELIMINARY STATEMENT

Following hard-fought merits litigation and a successful mediation facilitated by a preeminent mediator, Lead Plaintiff and the Settling Defendants proposed an $84 million Settlement for approval by the Court. The reaction of the Settlement Class confirms that the Settlement is an excellent result. Following an extensive notice program, including mailed notice to over 266,700 potential Settlement Class Members, Lead Plaintiff has received only 14 exclusion requests, and just one objection. Notably, not a single institutional investor or large shareholder requested exclusion or objected to any aspect of the Settlement, the Plan of Allocation, or the requested fees and expenses. The Settlement Class's positive reaction provides strong support for approval of the Settlement and is particularly meaningful because institutional investors held approximately 85% of the Cliffs common stock outstanding during the Settlement Class Period.

The lone objection was filed by Jeff M. Brown, a Boca Raton attorney and serial "professional" objector who routinely lodges meritless, pro forma objections to class action settlements and fee requests.[2] *See* § II.A, *infra*. Mr. Brown's objections to certain administrative aspects of the Settlement, the potential *cy pres* procedure, and the fee and expense application in this case are equally meritless. As demonstrated below, the Brown Objection consists of boilerplate

---

[1] Unless otherwise noted, capitalized terms have the meanings ascribed to them in the Stipulation and Agreement of Settlement with Individual Defendants dated March 10, 2016 (the "Stipulation") (ECF No. 96-1), or in the Joint Declaration of James A. Harrod and Michael B. Himmel in Support of (A) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration") (ECF No. 104).

[2] The objection of Jeff M. Brown ("Brown Objection") is attached as Exhibit 1 to the Supplemental Declaration of James A. Harrod ("Supplemental Harrod Declaration" or "Suppl. Harrod Decl.") filed herewith.

arguments that are either inapplicable to this Settlement, are identical to objections he proffered and were rightly overruled in other cases, or have no basis in law. This type of assembly-line objection adds nothing to the Court's consideration of the fee and expense application or the fairness, adequacy, or reasonableness of the proposed Settlement. It should, therefore, be rejected.

For all the reasons set forth herein, and in the opening papers filed with the Court on May 26, 2016, the Brown Objection should be overruled, and the Settlement, Plan of Allocation, and request for fees and expenses should be approved.

## ARGUMENT

I. **THE OVERWHELMINGLY POSITIVE RESPONSE OF THE SETTLEMENT CLASS STRONGLY SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION AND THE MOTION FOR ATTORNEYS' FEES AND EXPENSES**

In accordance with the Preliminary Approval Order (ECF No. 98), on April 1, 2016, the Court-appointed Claims Administrator, A.B. Data, Ltd. ("A.B. Data"), began mailing copies of the Notice and Claim Form (together, the "Notice Packet") to potential Settlement Class Members and their nominees. (*See* Declaration of Eric Schachter Regarding (A) Mailing of Notice and Proof of Claim and Release Form; (B) Publication of Summary Notice; and (C) Report on Requests for Exclusion Received to Date (ECF No. 104-3) ("Schachter Decl."), at ¶¶ 3-5.) As of June 22, 2016, A.B. Data has disseminated a total of 266,744 Notice Packets to potential members of the Settlement Class and nominees. (*See* Supplemental Declaration of Eric Schachter Regarding (A) Mailing of the Notice and Proof of Claim and Release Form; and (B) Report on Requests for Exclusion Received ("Suppl. Schachter Decl."), attached as Exhibit 2 to the Suppl. Harrod Decl. at ¶ 2.) In addition, the Summary Notice was published in *The Wall Street Journal* and transmitted over *PR Newswire* on April 14, 2016, and the Notice, Claim Form, Stipulation, and Preliminary Approval Order, among other documents, were posted on the website specifically created for the Settlement. (Schacter Decl. ¶¶ 9, 11.) Both the Notice and Summary Notice informed Settlement Class Members of the June 9,

2016 deadline to submit an objection to the Settlement, Plan of Allocation, or fee and expense application, or request exclusion from the Settlement Class.

On May 26, 2016, two weeks prior to the objection deadline, Lead Plaintiff and Lead Counsel filed detailed papers in support of the Settlement, Plan of Allocation, and fee and expense request. The motions are supported by detailed declarations of Plaintiffs' Counsel, Lead Plaintiff, the Claims Administrator, and former U.S. District Court Judge Layn Phillips, who mediated the case and recommended the settlement. These papers are available on the public docket (ECF Nos. 102-104) and Settlement website. (*See* Suppl. Schachter Decl. ¶ 3.)

Following this extensive notice process, only one objection (from a serial, professional objector) and fourteen requests for exclusion have been received. (*See* Suppl. Schachter Decl. ¶ 5.) With respect to the exclusions, seven were submitted by individuals who either appear not to be Settlement Class Members or did not provide sufficient information to determine whether they are Settlement Class Members.[3] The requests that did provide purchase information represent less than 1,200 shares of Cliffs common stock, or approximately 0.0006% of the approximately 200 million estimated affected shares.

Lead Plaintiff and Lead Counsel respectfully submit that the small number of requests for exclusion and "[t]he lack of significant objections is powerful evidence of the fairness of a proposed settlement." *In re Nationwide Fin. Servs. Litig.*, No. 2:08-CV-00249, 2009 WL 8747486, at *7 (S.D. Ohio Aug. 19, 2009) (citing *Brotherton v. Cleveland*, 141 F. Supp. 2d 894, 906 (S.D. Ohio 2001) ("[A] relatively small number of class members who object is an indication of a settlement's fairness.")); *In re Art Materials Antitrust Litig.*, 100 F.R.D. 367, 372 (N.D. Ohio 1983) (noting that

---

[3] A number of the requests for exclusion did not provide all of the information required by the Preliminary Approval Order and Notice, and two of the requests were received after the deadline. Lead Plaintiff respectfully requests that the Court waive all technical defects and timeliness issues and allow all persons and entities who submitted requests for exclusion, as set forth in Exhibit A to the Suppl. Schachter Decl., to be excluded from the Settlement Class.

overwhelming approval of proposed settlement by class members "is entitled to nearly dispositive weight in this court's evaluation of the proposed settlements").[4]

Moreover, no institutional investor has objected. Lead Plaintiff's expert estimates that approximately 85% of Cliffs outstanding common stock was held by institutional investors during the Settlement Class Period. Institutional investors typically possess the sophistication, resources, and acumen to consider the merits of a proposed class action settlement. The absence of any objections by institutional investors – combined with the support from the institutional investor Lead Plaintiff (New Jersey) – is further evidence of the fairness of the Settlement. *See N. Y. State Teachers' Ret. Sys. v. Gen. Motors Co.*, No. 14-11191, 2016 WL 2907968, at *10 (E.D. Mich. May 19, 2016) ("The adequacy and reasonableness of the Settlement is evidenced here by the fact that . . . there have been very few objections or inquiries regarding the settlement [and] [n]one of the objections was filed by an institutional investor even though such institutions owned 75% or more of GM's common stock during the Settlement Class Period and thus they have substantial financial interests in the action."); *In re Tyco Int'l, Ltd. Multidistrict Litig.*, 535 F. Supp. 2d 249, 261 (D.N.H. 2007) (finding that "[t]he reaction of the class to the settlement has been almost entirely positive," where "[n]one of the institutional investors have objected to the size of the settlement").[5]

---

[4] *See also In re Delphi Corp. Sec., Derivative & "ERISA" Litig.*, 248 F.R.D. 483, 499 (E.D. Mich. 2008) ("[S]mall number of objections . . . can be viewed as indicative of the adequacy of the settlement."); *Olden v. Gardner*, 294 F. App'x 210, 217 (6th Cir. 2008) (finding that 79 objections in class of nearly 11,000 "tends to support a finding that the settlement is fair"); *Int'l Union v. Ford Motor Co.*, No. 05-74730, 2006 WL 1984363, at *27 (E.D. Mich. July 13, 2006) (800 objections out of class of more than 170,000 provided "another reason to conclude that the Settlement is fair, reasonable, and adequate"), *aff'd*, 497 F.3d 615 (6th Cir. 2007).

[5] *See also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. 2013) (reaction of class supported settlement where "not one of the objections or requests for exclusion was submitted by an institutional investor"); *In re AT&T Corp. Sec. Litig.*, MDL No. 1399, 2005 WL 6716404, at *4 (D.N.J. Apr. 25, 2005) (approving settlement where "no objections were filed by any institutional investors who had great financial incentive to object"); *In re AOL Time Warner, Inc.*, No. MDL, 02 Civ. 5575 (SWK) 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (lack of objections from institutional investors supported approval of settlement); *In re BankAmerica Corp. Sec. Litig.*, 210 F.R.D. 694, 702-03 (E.D. Mo. 2002) (same).

4

The lack of institutional investor objections also supports approval of the fee request. *See Delphi Corp.*, 248 F.R.D. at 504 ("Given the substantial number of sophisticated institutional holders of Delphi Securities—including the four Lead Securities Plaintiffs who have filed declarations supporting the fee request—the existence of this one objection by a holder of comparatively few shares of stock is insignificant. ***The Class's overwhelming favorable response lends further support to the conclusion that the requested fee award is fair and reasonable***." (emphasis added)); *In re Cardizem CD Antitrust Litig.*, 218 F.R.D. 508, 534 (E.D. Mich. 2003) ("In light of the composition of the Class, which includes sophisticated, knowledgeable [class members] that have a significant stake in the outcome of this litigation, the absence of objection is remarkable . . . . ***This favorable response lends further support to this Court's conclusion that the requested fee is reasonable and fair***." (emphasis added)).[6]

Finally, the fact that there has been only one objection to the Plan of Allocation weighs in favor of its approval. *See, e.g., In re Lucent Techs., Inc., Sec. Litig.*, 307 F. Supp. 2d 633, 649 (D.N.J. 2004) ("The favorable reaction of the Class supports approval of the proposed Plan of Allocation."); *In re EVCI Career Colls. Holding Corp. Sec. Litig.*, No. 05 Civ. 10240 (CM), 2007 WL 2230177, at *11 (S.D.N.Y. July 27, 2007) (noting that "[c]ourts . . . [should] consider the reaction of a class to a plan of allocation" and that, where no objections are received, "the Plan of Allocation should be approved").

Consequently, the overwhelmingly positive reaction of the Settlement Class strongly supports approval of the Settlement, Plan of Allocation, and fee request.

---

[6] *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) (fact that "a significant number of investors in class were 'sophisticated' institutional investors that had considerable financial incentive to object had they believed the requested fees were excessive" and did not do so, supported approval of the fee request); *In re Bisys Sec. Litig.,* No. 04 Civ. 3840 (JSR), 2007 WL 2049726, at *1 (S.D.N.Y. July 16, 2007) (noting that only one individual raised any objection, "even though the class included numerous institutional investors who presumably had the means, the motive, and the sophistication to raise objections if they thought the [requested] fee was excessive"); *In re Auto. Refinishing Paint Antitrust Litig.,* MDL No. 1426, 2008 WL 63269, at *4 (E.D. Pa. Jan. 3, 2008) ("A lack of objections demonstrates that the Class views the settlement as a success and finds the request for counsel fees to be reasonable.").

## II. THE BROWN OBJECTION IS WITHOUT MERIT

### A. The Brown Objection Should be Viewed with Skepticism

Mr. Brown is a serial objector. In addition to the objection filed here, Brown has submitted objections in at least twelve other recent class actions on his own behalf or as counsel for the objector. (*See* Suppl. Harrod Decl. ¶ 4 (table of objections).) All such objections have been overruled or withdrawn, with the exception of one that is still pending. (*See id.*) When Mr. Brown has appealed, all of his appeals have been dismissed voluntarily or due to his failure to prosecute them. (*Id.*) Thus, not a single one of Mr. Brown's objections have been sustained by either a district or appellate court.

"Professional objectors undermine the administration of justice by disrupting settlement in the hopes of extorting a greater share of the settlement for themselves and their clients." *In re Initial Pub. Offering Sec. Litig.*, 728 F. Supp. 2d 289, 295 (S.D.N.Y. 2010). The "goal" of many professional objectors is "to hijack as many dollars for themselves as they can wrestle from a negotiated settlement" by pursuing frivolous appeals that delay settlements from becoming final. *In re UnitedHealth Grp. Inc. PSLRA Litig.*, 643 F. Supp. 2d 1107, 1109 (D. Minn. 2009). Not surprisingly, "[f]ederal courts are increasingly weary of professional objectors." *O'Keefe v. Mercedes-Benz USA, LLC*, 214 F.R.D. 266, 295 n.26 (E.D. Pa. 2003).[7]

Given Mr. Brown's history of filing frivolous objections – often containing boilerplate arguments that have been previously rejected – Lead Counsel respectfully submit that the Court should view the Brown Objection with skepticism. Indeed, the arguments Mr. Brown is asking this Court to accept have been proffered verbatim to several other federal courts, all of which summarily rejected them. *See In re Celestica, Inc. Sec. Litig.*, No. 1:07-cv-312-GBD-MHD, transcript at 24 (S.D.N.Y. July 28, 2015), ECF No. 269 (overruling objections virtually identical to those filed here and stating "I find in substance the objections are not valid objections to the nature of the settlement and I can really characterize them as general boilerplate objections without anything real specific with

---

[7] In his objection, Mr. Brown requests "an ***incentive fee*** . . . for his role in improving the settlement." (Suppl. Harrod Decl. Ex. 1 at 5 (emphasis added).)

regard to why this particular settlement is somehow unfair to the class and the class members") (Suppl. Harrod Decl. Ex. 4); (*see also* Suppl. Harrod Decl. ¶ 4; Exs. 3, 5, 6). As demonstrated below, this Court should do the same. *See Shaw v. Toshiba Am. Info. Sys., Inc.,* 91 F. Supp. 2d 942, 973 (S.D. Tex. 2000) ("[S]ome of the objections were obviously canned objections filed by professional objectors who seek out class actions to simply extract a fee by lodging generic, unhelpful protests . . . ." (footnote omitted)).

**B.      Mr. Brown's Grounds for Objecting to the Settlement are Baseless**

The Brown Objection is a list of 10 purported issues, without citation to any case law whatsoever. Points 1, 2, and 3 are directed to certain administrative issues about the Settlement. He does not object to the substance of the Settlement itself or the proposed recovery.

Point 1 of the Brown Objection posits that the claims administration process proposed by the Settlement "fails to require reliable future oversight, accountability and reporting." (Suppl. Harrod Decl. Ex. 1 at 2.) This is simply not true. The Claims Administrator was appointed by the Court, and is subject to the oversight of the Court and Lead Counsel. (*See* Preliminary Approval Order ¶ 8; Stipulation ¶ 20 ("The Claims Administrator shall administer the Settlement, including but not limited to the process of receiving, reviewing and approving or denying Claims, ***under Lead Counsel's supervision and subject to the jurisdiction of the Court***." (emphasis added); *see also id.* ¶ 26 ("Lead Counsel shall be responsible for supervising the administration of the Settlement and the disbursement of the Net Settlement Fund subject to Court approval.").) Furthermore, the Court will be asked to approve all of the claim determinations, to resolve any claimant disputes, and to approve all distributions at the conclusion of the claims administration process. (*See* Stipulation ¶¶ 27(d)-(e), 29, 48.)

Point 2 of the Brown Objection complains that "[n]o timeframe for completing administration of the monetary relief is set, therefore the [Claims] Administrator is not held to any specific timeframe to complete the settlement process." (Suppl. Harrod Decl. Ex. 1 at 3.) However, securities class action settlements generally have no set timeframe for the simple reason that neither the parties, the

court, nor the claims administrator are able to predict, for example, the number and nature of the claims that will be submitted, to what extent claims will be deficient, the time needed to resolve the deficiencies, and whether there will be disputes with claimants requiring resolution by the Court. The presence of these types of issues can, in some cases, take time to resolve prior to distribution of settlement proceeds. The one certainty is that there is a significant detriment to claimants if the claim determinations are incorrect because of undue haste.

Mr. Brown's final objection to the administration of the Settlement is made in Point 3, wherein he argues that legal fees should be withheld pending distribution in order "to assure Class Counsel's continuing oversight and involvement in implementing the settlement." (Suppl. Harrod Decl. Ex. 1 at 3.) Once again, Mr. Brown is wrong. Lead Counsel have vigorously pursued this case from the outset, they owe a fiduciary duty to the Settlement Class, and pursuant to the Stipulation will continue to actively monitor the administration and distribution process. There is absolutely no reason to believe that they will not continue to fulfill their obligations until those processes are completed. (Stipulation ¶¶ 27(e), 29.) Additional motivation is provided by the fact that the Lead Plaintiff, New Jersey, has a substantial financial interest in being paid as soon as possible, and Lead Counsel certainly will want to ensure that the claim of their client – a major institutional investor – is handled in an even-handed and expeditious manner. In addition, payment of attorneys' fees and expenses upon an award by the court is a common settlement provision, and courts typically approve payment of fees when awarded. *See In re AT&T Corp. Sec. Litig.*, 455 F.3d 160, 174-175 (3d Cir. 2006) (rejecting objectors' argument that "a portion of the attorneys' fees should be withheld pending payment of claims to class members" because the district court had found that "there was no indication class counsel would stop working diligently on behalf of the class" and the settlement amount was fixed, not contingent on the claims process); *In re NASDAQ Market-Makers Antitrust Litig.*, 187 F.R.D. 465, 479 (S.D.N.Y. 1998) ("Numerous courts have directed that the entire fee award be disbursed immediately upon entry of the award, or within a few days thereafter.") (collecting cases); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, No. MDL 3:07-MD-1827 SI, 2011 WL 7575004, at *1 (N.D. Cal.

Dec. 27, 2011) ("Federal courts, including this Court and others in this District, routinely approve settlements that provide for payment of attorneys' fees prior to final disposition in complex class actions.") (collecting cases).[8]

In sum, none of Mr. Brown's objections to the administrative and procedural aspects of the Settlement have merit, and all should be overruled.

### C.  Mr. Brown's Objection to the Plan of Allocation is Baseless

Point 7 of the Brown Objection asserts that "[s]ome *cy pres* procedure needs to be articulated" and objects to "[a]llowing the process to be determined solely by Lead Class Counsel and Court overview." (Suppl. Harrod Decl. Ex. 1 at 4.) The Settlement does, however, set forth a *cy pres* procedure. If there are any unclaimed or residual funds remaining after one or more full distributions of the Net Settlement Fund to Authorized Claimants are completed, and only if the funds remaining as a result of uncashed or returned checks is so small that a further distribution would not be cost-effective (such as when the costs to conduct a subsequent distribution would exceed the remaining funds), the unclaimed balance will be donated to charity. (*See* ¶ 67 of Notice of Settlement (ECF No. 104-3, Ex. A).) If that occurs, Lead Plaintiff will seek the Court's approval to contribute the remaining balance "to non-sectarian, not-for-profit organization(s), to be recommended by Lead Counsel and approved by the Court." (*Id*.)

Finally, since a *cy pres* award is not a foregone conclusion, it is important to recognize that identifying a *cy pres* recipient is not a condition precedent to approving the Settlement. *In re Am. Int'l. Grp., Inc. Sec. Litig.*, 293 F.R.D. 459, 463 (S.D.N.Y. 2013) ("[T]here [is] no legal authority to

---

[8] *See also In re Chipcom Corp. Sec. Litig.,* No. 95-11114-DPW, 1997 WL 1102329, at *10 (D. Mass. June 26, 1997) (approving settlement stipulation authorizing payment of attorneys' fees upon entry of judgment "despite the existence of any objections filed to the Fee and Expense Award, the potential for Appeal from the Fee and Expense Award, or collateral attack on the Settlement or any part thereof…"); *Turabo Med. Ctr. v. Beach,* No. 96-2250(DRD), 1997 WL 33810581, at *5 (D.P.R. Aug. 13, 1997) (ordering payment of attorneys' fees within 30 days of entry of final approval order); *Gilman v. Independence Blue Cross,* No. Civ.A. 96-1601, 1997 WL 633568, at *15 (E.D. Pa. Oct. 6, 1997) (ordering fees and costs to be paid from the settlement fund 31 days after entry of final approval order).

support the [objector's] argument; [and] no Court in this Circuit has ever made identifying the organization to receive the residual funds a condition precedent to a Settlement approval."). To the extent any *cy pres* distribution is ultimately necessary, the recipient will be approved by the Court at that time as is common in these types of cases. *In re Polyurethane Foam Antitrust Litig.*, No. 1:10 MD 2196, 2016 WL 320182, at *16 (N.D. Ohio Jan. 27, 2016) ("[C]*y pres* distributions will be made only after it is no longer economically practical to make distributions to the class, and only with this Court's approval that this *de minimis* distribution is appropriate."), *appeal dismissed* (May 18, 2016); *Am. Int'l Grp.*, 293 F.R.D. 459 at 463 ("Of course, it is not certain at the time of the Agreement whether there will be excess funds after all distributions are made pursuant to the Plan of Allocation." (citation and modification in original omitted)).

### D.    Mr. Brown's Objections to the Fee and Expense Application are Meritless

Points 4-6 and 8-10 of the Brown Objection are directed to the fee and expense application. Each is without merit and should be rejected.

Point 4 contends that the "[a]ttorney [f]ees [requested] do not depend upon how much relief is actually paid to the Class Members." (Suppl. Harrod Decl. Ex. 1 at 3.) This is simply wrong. Lead Counsel are requesting a specific percentage of the $84 million actually recovered for the Settlement Class, and Defendants do not have any reversionary interest in the Settlement Fund.

Points 5 and 8 assert, based only on Mr. Brown's review of the docket sheet, that the "percentage of the settlement amount [being requested] is far too high" and that the "[a]ttorneys' fees are disproportionate to the value of the [r]ecovery of the Class." (Suppl. Harrod Decl. Ex. 1 at 3, 4.) This is, however, a complete *non sequitur*, as the number of docket entries is utterly irrelevant to an actual understanding of the amount of work that was necessarily put into the case by Plaintiff's Counsel in order to obtain the $84 million recovery. Indeed, as detailed in the Joint Declaration, many tasks that counsel undertook did not result in any docket entries whatsoever. This work included, for example, the extensive investigation undertaken by Lead Counsel in order to prepare the amended complaints (including interviews with scores of former Cliffs' employees and others with relevant

knowledge), consultation with experts on issues such as loss causation, damages, and the iron ore market, preparation for and attendance at the mediation, and post-mediation negotiations and drafting of the settlement documents. All of this work, as well as much more, was necessary due to the complicated legal and factual issues in this case. It is a vast oversimplification of the litigation process to count the number of docket entries and arrive at some assumption as to the time and effort that was incurred in this case. *See Alaska Elec. Pension Fund v. Flowserve Corp.*, 572 F.3d 221, 235 (5th Cir. 2009) ("To be successful, a securities class-action plaintiff must thread the eye of a needle made smaller and smaller over the years by judicial decree and congressional action.")); *see also AOL Time Warner*, 2006 WL 903236, at *9 ("[T]he legal requirements for recovery under the securities laws present considerable challenges, particularly with respect to loss causation and the calculation of damages.").

It also bears noting that fee request of 16% of the Settlement Fund is well within the range of fees awarded in the Sixth Circuit on a percentage basis in complex common fund cases (*see* Lead Counsel's opening memorandum at pp. 6-10), is significantly below the 25% that some courts consider the "benchmark" percentage (*see id*. at n.5), and is consistent with the *ex ante* agreement entered into between Lead Counsel and Lead Plaintiff. The agreement provides for varying fee amounts based on a combination of the procedural posture at the time of settlement and the amount of the recovery. Thus, for example, had the litigation settled after summary judgment, a higher fee request would have been permitted. Mr. Brown's contention that the fee should be reduced because there was no summary judgment motion (Suppl. Harrod Decl. Ex. 1 at 4) is, therefore, off-base. In fact, this is precisely why some Courts have accorded a "presumption of reasonableness to any fee request submitted pursuant to a retainer agreement that was entered into between a properly-selected lead plaintiff and a properly-selected lead counsel." *In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001); *In re Global Crossing Sec. & ERISA Litig.*, 225 F.R.D. 436, 466 (S.D.N.Y. 2004) (finding presumption was particularly appropriate where "Lead Counsel's application is based on a

sliding scale set in a retainer agreement by sophisticated Lead Plaintiffs operating under the oversight of the Ohio Attorney General").

Point 6 contends that "[n]o fee request is reasonable in the absence of documentation, including detailed billing records (including hourly rates of the professionals, actual time entries, hours accumulated and reasonable costs incurred)." (Suppl. Harrod Decl. Ex. 1 at 4.) Mr. Brown is wrong on both the facts and the law. The review Mr. Brown suggests is not necessary, particularly here, where Lead Counsel are requesting a fee on the percentage-of-the-fund basis. Moreover, each of the Plaintiff's Counsel have provided the Court with a declaration detailing the work performed by that firm, the hourly rates of the professionals who did the work, the number of hours accumulated by those professionals, and the reasonable costs incurred. (*See* ECF 104-4.) Lead Counsel have also provided the Court with a 44-page Joint Declaration describing in great detail the work performed by counsel in the case. (*See* ECF 104.) This approach is wholly consistent with the law of this and other Circuits in common fund cases, which does not require the district court to review detailed time records when awarding fees under the percentage of the fund method, even when applying a lodestar cross-check. *See Gascho v. Glob. Fitness Holdings, LLC*, No. 14-3761, 2016 WL 2802473, at *10 (6th Cir. May 13, 2016) (finding billing information similar to that supplied by Plaintiff's Counsel in this case sufficient to uphold a fee award made based on a lodestar analysis where the district court independently validated the fee award under the percentage-of-the-fund method); *Bowling v. Pfizer, Inc.,* 102 F.3d 777, 779-81 (6th Cir. 1996) (affirming district court's fee award, which was based on the percentage-of-the-fund and cross-checked based on counsel's lodestar).[9]  Indeed, to hold otherwise would be to make the worst aspects of the lodestar method mandatory. *See Rawlings v.*

_____

[9] *See also In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 n.3 (E.D. Tenn. May 17, 2013) ("Unlike the situation when the Court employs the lodestar method in full, 'the hours documented by counsel need not be exhaustively scrutinized by the district court' where a lodestar cross-check is used.") (quoting *In re WorldCom Sec. Litig.*, 388 F. Supp. 2d 319, 355 (S.D.N.Y. 2005) (citing *Goldberger v. Integrated Res., Inc.*, 209 F.3d 43, 50 (2d Cir. 2000))); *Rite Aid Corp.,* 396 F.3d at 306-07 ("The district courts may rely on summaries submitted by the attorneys and need not review actual billing records.").

*Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516-17 (6th Cir. 1993) ("[T]he lodestar method has been criticized for being too time-consuming of scarce judicial resources" as it requires district courts to "pore over time sheets, arrive at a reasonable hourly rate, and consider numerous factors in deciding whether to award a multiplier."); *Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 121 (2d Cir. 2005) (stating that lodestar approach "create[s] an unanticipated disincentive to early settlements, tempt[s] lawyers to run up their hours, and compel[s] district courts to engage in a gimlet-eyed review of line-item fee audits" (citations omitted)).

In sum, all that is required from the Court when awarding a fee is a clear and concise explanation of its reasons for adopting a particular methodology and the factors it considered in arriving at the fee. *See Gascho*, 2016 WL 2802473, at *8; *Rawlings*, 9 F.3d. at 516.[10]

Finally, without citation to any authority, points 9 and 10 challenge reimbursement of Lead Counsel and Lead Plaintiff's expenses for lack of supporting documentation. Once again, Mr. Brown is wrong. Lead Counsel and Lead Plaintiff have both provided declarations, executed under penalty of perjury, attesting to the accuracy of the claimed costs and expenses. Nothing more is required. *See Se. Milk*, 2013 WL 2155387, at *8 ("Although the declarations submitted by class counsel are not itemizations of all of the expenses incurred but rather an aggregate listing of the expenses for each

---

[10] Since submission of Lead Counsel's opening brief in support of their fee and expense application on May 26, 2016, the Sixth Circuit has issued an opinion overturning a district court decision cited therein. The Sixth Circuit's decision in *Shane Group., Inc. v. Blue Cross Blue Shield of Michigan*, Nos. 15-1544/1551/1552, 2016 WL 3163073 (6th Cir. June 7, 2016), dealt primarily with the propriety of sealing certain documents that would impact class members' ability to evaluate the settlement, an issue that is not germane to this case. However, the decision also contained a two-paragraph discussion regarding a fee and expense request in a common fund case under a lodestar analysis, and suggested that the backup information provided to the lower court was insufficient. Notably, unlike here, counsel in *Shane* did not provide the Court with the equivalent of the 44-page Joint Declaration detailing the work performed in the case. *See* ECF 104. In addition, the Sixth Circuit expressly stated that "the Court's error was specific to the record here." *Shane* at *7; *compare Gascho*, 2016 WL 2802473, at *10 (6th Cir. May 13, 2016) (affirming lodestar award despite arguably "minimal billing information" when "the district court also employed the percentage of the fund cross-check and . . . that method independently validated the decision to award the attorney's fees in the case"); *Bowling*, 102 F.3d at 779–81 (6th Cir. 1996) (affirming percentage-of-the-fund fee award without reviewing lodestar analysis).

category, the Court finds the declarations submitted sufficiently detailed and the Court is persuaded that the expenses are legitimate and are reasonable in the case and will approve payment to class counsel from the common settlement fund in the amount of $798,237.66 as reimbursement for their out-of-pocket expenses."); *New England Health Care Employees Pension Fund v. Fruit of the Loom, Inc.*, 234 F.R.D. 627, 635 (W.D. Ky. 2006) (approving PSLRA awards to Lead Plaintiffs where "Lead Plaintiffs in both actions have submitted declarations setting forth their time and actual expenses incurred."), *aff'd sub nom. Fidel v. Farley*, 534 F.3d 508 (6th Cir. 2008).

<u>CONCLUSION</u>

For all the foregoing reasons, and those set forth in their opening papers, Lead Plaintiff and Lead Counsel respectfully request that the Court approve the Settlement, the Plan of Allocation, and the request for attorneys' fees and reimbursement of Litigation Expenses. Attached hereto as Exhibits 1-3 are, respectively, (1) the proposed Order and Final Judgment, (2) the proposed Order Approving Plan of Allocation of Net Settlement Fund, and (3) the proposed Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses.

Dated: June 23, 2016                           Respectfully submitted,


                                               */s/ Scott D. Simpkins*
                                               John R. Climaco (0011456)
                                               Scott D. Simpkins (0066775)
                                               **CLIMACO WILCOX PECA TARANTINO
                                               & GAROFOLI CO., LPA**
                                               55 Public Square, Suite 1950
                                               Cleveland, Ohio 44113
                                               Telephone: (216) 621-8484
                                               Facsimile: (216) 771-1632
                                               jrclim@climacolaw.com
                                               sdsimp@climacolaw.com

                                               *Local Counsel for Lead Plaintiff, The
                                               Department of the Treasury of the State of New
                                               Jersey and its Division of Investment, and the
                                               Settlement Class*

James A. Harrod
Jeremy P. Robinson
Rebecca E. Boon
Adam D. Hollander
**BERNSTEIN LITOWITZ BERGER**
**& GROSSMANN LLP**
1251 Avenue of the Americas
New York, New York 10020
Telephone: (212) 554-1400
Facsimile: (212) 554-1444
jim.harrod@blbglaw.com
jeremy@blbglaw.com
rebecca.boon@blbglaw.com
adam.hollander@blbglaw.com

Michael B. Himmel
Michael T.G. Long
Jamie R. Gottlieb
Joseph A. Fischetti
Brandon M. Fierro
**LOWENSTEIN SANDLER LLP**
65 Livingston Avenue
Roseland, New Jersey 07068
Telephone: (973) 597-2500
Facsimile: (973) 597-2400
mhimmel@lowenstein.com
mlong@lowenstein.com
jgottlieb@lowenstein.com
jfischetti@lowenstein.com
bfierro@lowenstein.com

*Lead Counsel for Lead Plaintiff, The*
*Department of the Treasury of the State of New*
*Jersey and its Division of Investment, and the*
*Settlement Class*

#992234

# EXHIBIT 1

| | |
|---|---|
| THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT, on behalf of itself and all others similarly situated, | Case No. 1:14-cv-1031 |
| Plaintiff, | Judge Dan Aaron Polster |
| v. | Magistrate Judge Greg White |
| CLIFFS NATURAL RESOURCES INC., JOSEPH CARRABBA, LAURIE BRLAS, TERRY PARADIE, and DAVID B. BLAKE, | |
| Defendants. | |

## [PROPOSED] ORDER AND FINAL JUDGMENT

WHEREAS, a securities class action is pending in this Court entitled *The Department of the Treasury of the State of New Jersey and its Division of Investment v. Cliffs Natural Resources Inc., et al.*, Case No. 1:14-cv-1031 (the "Action");

WHEREAS, (a) Lead Plaintiff, The Department of the Treasury of the State of New Jersey and its Division of Investment ("New Jersey"), on behalf of itself and the other members of the Settlement Class (defined below), and (b) defendants Terrance Paradie, Joseph Carrabba, Laurie Brlas, and David Blake (collectively, the "Individual Defendants" or the "Settling Defendants," and together with New Jersey, the "Settling Parties") have entered into a Stipulation and Agreement of Settlement with Individual Defendants dated March 10, 2016 (the "Stipulation") (ECF No. 96-1), that provides for a complete dismissal with prejudice of the claims asserted in the Action on the terms and conditions set forth in the Stipulation, subject to the approval of this Court (the "Settlement");

WHEREAS, Defendant Cliffs Natural Resources Inc. ("Cliffs" or the "Company") executed the Stipulation and is a participant in the Settlement only for the limited purposes of: (a) exchanging Releases with New Jersey and the Settlement Class; (b) making certain representations concerning the events and conduct of the parties and their counsel in connection with and related to the Action; (c) providing shareholder records to New Jersey; and (d) providing notice pursuant to the Class Action Fairness Act, 28 U.S.C. § 1715 *et seq.*;

WHEREAS, unless otherwise defined in this Judgment, the capitalized terms herein shall have the same meaning as they have in the Stipulation;

WHEREAS, by Order dated March 11, 2016 (the "Preliminary Approval Order") (ECF No. 98), this Court: (a) preliminarily approved the Settlement; (b) certified the Settlement Class solely for purposes of effectuating the Settlement; (c) ordered that notice of the proposed Settlement be provided to potential Settlement Class Members; (d) provided Settlement Class Members with the opportunity either to exclude themselves from the Settlement Class or to object to the proposed Settlement; and (e) scheduled a hearing regarding final approval of the Settlement;

WHEREAS, due and adequate notice has been given to the Settlement Class;

WHEREAS, the Court conducted a hearing on June 30, 2016 (the "Settlement Hearing") to consider, among other things, (a) whether the terms and conditions of the Settlement are fair, reasonable and adequate to the Settlement Class, and should therefore be approved; and (b) whether a judgment should be entered dismissing the Action with prejudice; and

WHEREAS, the Court having reviewed and considered the Stipulation, all papers filed and proceedings held herein in connection with the Settlement, all oral and written comments received regarding the Settlement, and the record in the Action, and good cause appearing therefor;

IT IS HEREBY ORDERED, ADJUDGED AND DECREED:

1.      **Jurisdiction** – The Court has jurisdiction over the subject matter of the Action and all matters relating to the Settlement, as well as personal jurisdiction over New Jersey, the Defendants, and each of the Settlement Class Members.

2.      **Incorporation of Settlement Documents** – This Judgment incorporates and makes a part hereof:  (a) the Stipulation filed with the Court on March 10, 2016; and (b) the Notice and the Summary Notice, both of which were filed with the Court on May 26, 2016.

3.      **Class Certification for Settlement Purposes** – The Court hereby affirms its determinations in the Preliminary Approval Order certifying, for Settlement purposes only, the Action as a class action pursuant to Rules 23(a) and (b)(3) of the Federal Rules of Civil Procedure on behalf of a Settlement Class consisting of all persons and entities who or which purchased Cliffs common stock from March 14, 2012 through March 26, 2013, inclusive (the "Settlement Class Period") and were damaged thereby.  Excluded from the Settlement Class are Defendants; members of the Immediate Family of each of the Individual Defendants; the Officers and/or directors of Cliffs during the Settlement Class Period; and any firm, trust, corporation, or other entity in which any Defendant has or had a controlling interest.  Also excluded from the Settlement Class are the persons and entities listed on Exhibit 1 hereto that are excluded from the Settlement Class pursuant to request.

4.      **Adequacy of Representation** – Pursuant to Rule 23 of the Federal Rules of Civil Procedure, and for Settlement purposes only, the Court hereby affirms its determinations in the Preliminary Approval Order certifying New Jersey as the Class Representative for the Settlement Class and appointing Lead Counsel as Class Counsel for the Settlement Class.  New Jersey and Lead Counsel have fairly and adequately represented the Settlement Class both in terms of

litigating the Action and for purposes of entering into and implementing the Settlement and have satisfied the requirements of Federal Rules of Civil Procedure 23(a)(4) and 23(g), respectively.

5. **Notice** – The Court finds that the dissemination of the Notice and the publication of the Summary Notice: (a) were implemented in accordance with the Preliminary Approval Order; (b) constituted the best notice practicable under the circumstances; (c) constituted notice that was reasonably calculated, under the circumstances, to apprise Settlement Class Members of (i) the pendency of the Action; (ii) the effect of the proposed Settlement (including the Releases to be provided thereunder); (iii) Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses; (iv) their right to object to any aspect of the Settlement, the Plan of Allocation and/or Lead Counsel's motion for attorneys' fees and reimbursement of Litigation Expenses; (v) their right to exclude themselves from the Settlement Class; and (vi) their right to appear at the Settlement Hearing; (d) constituted due, adequate, and sufficient notice to all persons and entities entitled to receive notice of the proposed Settlement; and (e) satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*., as amended, and all other applicable law and rules.

6. Defendants have filed a Declaration Regarding Compliance with the Class Action Fairness Act of 2005 ("CAFA"), 28 U.S.C. § 1715. Defendants timely mailed notice of the Stipulation pursuant to 28 U.S.C. § 1715(b), including notices to the Attorney General of the United States of America, and the Attorneys General of all states in which members of the Settlement Class reside. The notice contains the documents and information required by 28 U.S.C. § 1715(b)(1)-(8). The Court finds that Defendants have complied in all respects with the requirements of 28 U.S.C. § 1715.

7.     **Final Settlement Approval and Dismissal of Claims** – Pursuant to, and in accordance with, Rule 23 of the Federal Rules of Civil Procedure, this Court hereby fully and finally approves the Settlement set forth in the Stipulation in all respects (including, without limitation: the amount of the Settlement; the Releases provided for therein; and the dismissal with prejudice of the claims asserted in the Action), and finds that the Settlement is, in all respects, fair, reasonable and adequate to the Settlement Class. One objection to the Settlement has been received, which the Court has considered and found to be without merit. The Settling Parties and Cliffs are directed to implement, perform and consummate the Settlement in accordance with the terms and provisions contained in the Stipulation.

8.     All of the claims asserted in the Action by New Jersey and the other Settlement Class Members are hereby dismissed with prejudice. The Settling Parties shall bear their own costs and expenses, except as otherwise expressly provided in the Stipulation.

9.     **Binding Effect** – The terms of the Stipulation and of this Judgment shall be forever binding on the Settling Defendants, Cliffs, New Jersey and all other Settlement Class Members (regardless of whether or not any individual Settlement Class Member submits a Claim Form or seeks or obtains a distribution from the Net Settlement Fund), as well as their respective successors and assigns. The persons and entities listed on Exhibit 1 hereto are excluded from the Settlement Class pursuant to request and are not bound by the terms of the Stipulation or this Judgment.

10.     **Releases** – The Releases set forth in paragraphs 5 and 6 of the Stipulation, together with the definitions contained in paragraph 1 of the Stipulation relating thereto, are expressly incorporated herein in all respects. The Releases are effective as of the Effective Date. Accordingly, this Court orders that:

(a)     Without further action by anyone, and subject to paragraph 11 below, upon the Effective Date of the Settlement, New Jersey and each of the other Settlement Class Members, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Plaintiff's Claim against the Defendants and the other Defendants' Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Plaintiff's Claims against any of the Defendants' Releasees. This Release shall not apply to any of the Excluded Claims (as that term is defined in paragraph 1(s) of the Stipulation).

(b)     Without further action by anyone, and subject to paragraph 11 below, upon the Effective Date of the Settlement, Defendants, on behalf of themselves and their respective heirs, executors, administrators, predecessors, successors, and assigns, in their capacities as such, shall be deemed to have, and by operation of law and of this Judgment shall have, fully, finally and forever compromised, settled, released, resolved, relinquished, waived and discharged each and every Released Defendants' Claim against New Jersey and the other Plaintiff's Releasees, and shall forever be barred and enjoined from prosecuting any or all of the Released Defendants' Claims against any of the Plaintiff's Releasees. This Release shall not apply to any claims against any person or entity listed on Exhibit 1 hereto.

11.     Notwithstanding paragraphs 10(a) – (b) above, nothing in this Judgment shall bar any action by any of the Settling Parties or Cliffs to enforce or effectuate the terms of the Stipulation or this Judgment.

12. **Rule 11 Findings** – The Court finds and concludes that New Jersey and the Defendants and their respective counsel have complied in all respects with the requirements of Rule 11 of the Federal Rules of Civil Procedure in connection with institution, prosecution, defense and/or settlement of this Action.

13. **No Admissions** – Neither this Judgment, the Term Sheet, the Stipulation (whether or not consummated), including the exhibits thereto and the Plan of Allocation contained therein (or any other plan of allocation that may be approved by the Court), the negotiations leading to the execution of the Term Sheet and the Stipulation, nor any proceedings taken pursuant to or in connection with the Term Sheet, the Stipulation and/or approval of the Settlement (including any arguments proffered in connection therewith):

(a) shall be offered against any of the Defendants' Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession, or admission by any of the Defendants' Releasees with respect to the truth of any fact alleged by New Jersey or the validity of any claim that was or could have been asserted or the deficiency of any defense that has been or could have been asserted in this Action or in any other litigation, or of any liability, negligence, fault, or other wrongdoing of any kind of any of the Defendants' Releasees or in any way referred to for any other reason as against any of the Defendants' Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation or this Judgment;

(b) shall be offered against any of the Plaintiff's Releasees as evidence of, or construed as, or deemed to be evidence of any presumption, concession or admission by any of the Plaintiff's Releasees that any of their claims are without merit, that any of the Defendants' Releasees had meritorious defenses, or that damages recoverable under the Complaint would not

have exceeded the Settlement Amount or with respect to any liability, negligence, fault or wrongdoing of any kind, or in any way referred to for any other reason as against any of the Plaintiff's Releasees, in any civil, criminal or administrative action or proceeding, other than such proceedings as may be necessary to effectuate the provisions of the Stipulation or this Judgment;

     (c)    shall be offered or construed as evidence that a class should or should not be certified in the Action if the Settlement is not consummated; or

     (d)    shall be construed against any of the Releasees as an admission, concession, or presumption that the consideration to be given under the Stipulation represents the amount that could be or would have been recovered after trial;

*provided, however*, that the Settling Parties and the Releasees and their respective counsel may refer to this Judgment and the Stipulation to effectuate the protections from liability granted hereunder and thereunder or otherwise to enforce the terms of the Settlement.

14.    **Retention of Jurisdiction** – Without affecting the finality of this Judgment in any way, this Court retains continuing and exclusive jurisdiction over:  (a) New Jersey, the Settling Defendants, and Cliffs (to the extent necessary as set forth herein) for purposes of the administration, interpretation, implementation and enforcement of the Settlement;  (b) the disposition of the Settlement Fund; (c) any motion for an award of attorneys' fees and/or Litigation Expenses by Lead Counsel in the Action that will be paid from the Settlement Fund; (d) any motion to approve the Plan of Allocation; (e) any motion to approve the Class Distribution Order; and (f) the Settlement Class Members for all matters relating to the Action.

15.    Separate orders shall be entered regarding approval of a plan of allocation and the motion of Lead Counsel for an award of attorneys' fees and reimbursement of Litigation Expenses.

Such orders shall in no way affect or delay the finality of this Judgment and shall not affect or delay the Effective Date of the Settlement.

16.     **Modification of the Agreement of Settlement** – Without further approval from the Court, the parties to the Stipulation are hereby authorized to agree to and adopt such amendments or modifications of the Stipulation or any exhibits attached thereto to effectuate the Settlement that: (a) are not materially inconsistent with this Judgment; and (b) do not materially limit the rights of Settlement Class Members in connection with the Settlement.  Without further order of the Court, the parties to the Stipulation may agree to reasonable extensions of time to carry out any provisions of the Settlement.

17.     **Termination of Settlement** – If the Settlement is terminated as provided in the Stipulation or the Effective Date of the Settlement otherwise fails to occur, this Judgment shall be vacated, rendered null and void and be of no further force and effect, except as otherwise provided by the Stipulation, and this Judgment shall be without prejudice to the rights of New Jersey, the other Settlement Class Members, the Settling Defendants and Cliffs, and the Settling Parties and Cliffs shall revert to their respective litigation positions in the Action as of immediately prior to the execution of the Term Sheet on January 22, 2016, as provided in the Stipulation.

18.     **Entry of Final Judgment** – There is no just reason to delay the entry of this Judgment as a final judgment in this Action.  Accordingly, the Clerk of the Court is expressly directed to immediately enter this final judgment in this Action.

SO ORDERED this _____ day of _____, 2016.


_____
The Honorable Dan Aaron Polster
United States District Judge

9

**Exhibit 1**

1. Richard Dallas Clayton & Emily M. Clayton TTEES U/A DTD 05/06/2005
   Bosque Farms, NM

2. Rachel Crowe
   Skull Valley, AZ

3. Joseph A. Hagen and Adele R. Hagen, Trustees of the Joseph & Adele Hagen 2012 Trust
   Dated 12/19/2012
   Lancaster, CA

4. Joan H. Long
   Coatesville, PA

5. Alexander R. MacKenzie
   Lauderhill, FL

6. Gordon Mann
   Meredith, NH

7. Karen H. Mertens
   Perry, GA

8. Gerald M. Modjeski
   Winona, MN

9. Glenn M. Riffle
   Jacksonville, FL

10. Michael David Sallon and Diana Mary Sallon
    Holt, Norfolk, United Kingdom

11. Schmidt Family Bypass Trust UAD 08/26/08, Glenda S. Schmidt TTEE
    Kirkland, WA

12. Patricia A. Semplak
    Garrettsville, OH

13. Steven J. Snider
    Newton, MA

14. Stephen P. Yaw and Janice L. Yaw
    Wildwood, FL

# EXHIBIT 2

**NORTHERN DISTRICT OF OHIO**
**EASTERN DIVISION**

| | |
|---|---|
| THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT, on behalf of itself and all others similarly situated,<br><br>        Plaintiff,<br><br>v.<br><br>CLIFFS NATURAL RESOURCES INC., JOSEPH CARRABBA, LAURIE BRLAS, TERRY PARADIE, and DAVID B. BLAKE,<br><br>        Defendants. | Case No. 1:14-cv-1031<br><br>Judge Dan Aaron Polster<br><br>Magistrate Judge Thomas M. Parker |

**[PROPOSED] ORDER APPROVING**
**PLAN OF ALLOCATION OF NET SETTLEMENT FUND**

This matter came on for hearing on June 30, 2016 (the "Settlement Hearing") on the motion by Lead Plaintiff, The Department of the Treasury of the State of New Jersey and its Division of Investment ("New Jersey"), to determine whether the proposed plan of allocation of the Net Settlement Fund ("Plan of Allocation") created by the Settlement achieved in the above-captioned class action (the "Action") should be approved. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the proposed Plan of Allocation,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.     This Order approving the proposed Plan of Allocation incorporates by reference the definitions in the Stipulation and Agreement of Settlement with Individual Defendants dated March 10, 2016 (the "Stipulation") (ECF No. 96-1) and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.     The Court has jurisdiction to enter this Order approving the proposed Plan of Allocation, and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.     Notice of New Jersey's motion for approval of the proposed Plan of Allocation was given to all Settlement Class Members who could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for approval of the proposed Plan of Allocation satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4, *et seq*., as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.     Copies of the Notice, which included the Plan of Allocation, were mailed to over 266,700 potential Settlement Class Members and nominees, and one objection to the proposed plan, filed by Jeff M. Brown, has been received.  The Court has considered the objection filed by Mr. Brown and found it to be without merit, and it is hereby denied.

5.     The Court hereby finds and concludes that the formula for the calculation of the claims of Claimants as set forth in the Plan of Allocation mailed to Settlement Class Members provides a fair and reasonable basis upon which to allocate the proceeds of the Net Settlement Fund among Settlement Class Members with due consideration having been given to administrative

convenience and necessity.

6.    The Court hereby finds and concludes that the Plan of Allocation is, in all respects, fair and reasonable to the Settlement Class.

7.    There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____ day of _____, 2016.


_____
            The Honorable Dan Aaron Polster
            United States District Judge

# EXHIBIT 3

# UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | |
|---|---|
| THE DEPARTMENT OF THE TREASURY OF THE STATE OF NEW JERSEY AND ITS DIVISION OF INVESTMENT, on behalf of itself and all others similarly situated, | Case No. 1:14-cv-1031 |
| | Judge Dan Aaron Polster |
| Plaintiff, | Magistrate Judge Thomas M. Parker |
| v. | |
| CLIFFS NATURAL RESOURCES INC., JOSEPH CARRABBA, LAURIE BRLAS, TERRY PARADIE, and DAVID B. BLAKE, | |
| Defendants. | |

## [PROPOSED] ORDER AWARDING ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES

This matter came on for hearing on June 30, 2016 (the "Settlement Hearing") on Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses. The Court having considered all matters submitted to it at the Settlement Hearing and otherwise; and it appearing that notice of the Settlement Hearing substantially in the form approved by the Court was mailed to all Settlement Class Members who or which could be identified with reasonable effort, and that a summary notice of the Settlement Hearing substantially in the form approved by the Court was published in *The Wall Street Journal* and was transmitted over the *PR Newswire* pursuant to the specifications of the Court; and the Court having considered and determined the fairness and reasonableness of the award of attorneys' fees and Litigation Expenses requested,

NOW, THEREFORE, IT IS HEREBY ORDERED THAT:

1.    This Order incorporates by reference the definitions in the Stipulation and Agreement of Settlement with Individual Defendants dated March 10, 2016 (the "Stipulation") (ECF No. 96-1) and all capitalized terms not otherwise defined herein shall have the same meanings as set forth in the Stipulation.

2.    The Court has jurisdiction to enter this Order and over the subject matter of the Action and all parties to the Action, including all Settlement Class Members.

3.    Notice of Lead Counsel's motion for an award of attorneys' fees and reimbursement of Litigation Expenses was given to all Settlement Class Members who or which could be identified with reasonable effort.  The form and method of notifying the Settlement Class of the motion for an award of attorneys' fees and expenses satisfied the requirements of Rule 23 of the Federal Rules of Civil Procedure, the United States Constitution (including the Due Process Clause), the Private Securities Litigation Reform Act of 1995, 15 U.S.C. § 78u-4*, et seq*., as amended, and all other applicable law and rules, constituted the best notice practicable under the circumstances, and constituted due and sufficient notice to all persons and entities entitled thereto.

4.    The Settlement Fund is a "common fund," and courts have long recognized that a lawyer who recovers such a fund is entitled to a reasonable attorney fee from that fund as a whole. *See Boeing v. Van Gemert,* 444 U.S. 472, 478, (1980); *Blum v. Stenson,* 465 U.S. 886, 900 n. 16, (1984).  In determining a fee award, the Court has the discretion to utilize either the percentage-of-the-fund or lodestar methods.  *See Bowling v. Pfizer, Inc.*, 102 F.3d 777, 780 (6th Cir. 1996); *Rawlings v. Prudential-Bache Properties, Inc.*, 9 F.3d 513, 516 (6th Cir. 1993).

5.    Given the circumstances of this case, the Court will base "its fee award on a percentage of the common fund and then cross-check[] the fee against class counsel's lodestar." *Bowling*, 102 F.3d at 780.  The percentage-of-the-fund method "more accurately reflects the result

achieved;" . . . "has the virtue of reducing the incentive for Plaintiff's attorneys to over-litigate or 'churn' cases" (*In re Skelaxin (Metaxalone) Antitrust Litig.*, MDL No. 2343, 2014 WL 2946459, *1 (E.D. Tenn. Jun. 30, 2014) (citations omitted)), and "'provides a powerful incentive for the efficient prosecution and early resolution of litigation.'" *In re Se. Milk Antitrust Litig.*, No. 2:07-CV 208, 2013 WL 2155387, at *2 (E.D. Tenn. May 17, 2013) (quoting *Wal–Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 121 (2d Cir. 2005)).

6.    The Court find this approach appropriate given that a substantial common fund has been established for the benefit of Settlement Class Members through the efforts of Plaintiff's Counsel, and the fact that that application of the percentage-of-the-fund method, when employed in connection with a lodestar cross-check, accounts for both the amount of work done and reflects the results achieved by class counsel. *See In re Se. Milk*, 2013 WL 2155387, at *2; *Gascho v. Glob. Fitness Holdings, LLC*, No. 14-3761, 2016 WL 2802473, at *7 (6th Cir. May 13, 2016).

7.    Application of the percentage-of-the-fund method to this securities class action is also consistent with the PSLRA, which provides that "[t]otal attorneys' fees and expenses awarded by the court to counsel for the plaintiff class shall not exceed a reasonable percentage of the amount" recovered for the class. 15 U.S.C. § 78u-1(a)(6); *see also Union Asset Mgmt. Holding A.G. v. Dell, Inc.*, 669 F.3d 632, 643 (5th Cir. 2012). Finally, application of the percentage-of-the-fund method is consistent with the *ex ante* fee agreement entered into between Lead Counsel and Lead Plaintiff, The Department of the Treasury of the State of New Jersey and its Division of Investment ("New Jersey"). *See In re Cendant Corp. Litig.*, 264 F.3d 201, 282 (3d Cir. 2001).

8.    Plaintiff's Counsel are hereby awarded attorneys' fees in the amount of _____% of the Settlement Fund and $_____ in reimbursement of Plaintiff's Counsel's litigation expenses (which fees and expenses shall be paid from the Settlement Fund), which sums the Court

finds to be fair and reasonable. Lead Counsel shall allocate the attorneys' fees awarded amongst Plaintiff's Counsel in a manner which they, in good faith, believe reflects the contributions of such counsel to the institution, prosecution and settlement of the Action.

9. In making this award of attorneys' fees and reimbursement of expenses to be paid from the Settlement Fund, the Court has considered, among other things, its experience overseeing this case since its inception; Lead Counsel's memorandum of law in support of an award of attorneys' fees and litigation expenses; Lead Counsel's reply memorandum of law in support of an award of attorneys' fees and litigation expenses; the declarations submitted by each firm constituting Plaintiff's Counsel; the Joint Declaration of James A. Harrod and Michael B. Himmel in Support of (A) Lead Plaintiff's Motion for Final Approval of Class Action Settlement and Plan of Allocation, and (B) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Joint Declaration"); the Declaration of Hon. Layn Phillips (Ret.) who acted as a mediator and recommended the Settlement; and the oral argument of counsel, and found that:

(a) The Settlement has created a common fund of $84,000,000 in cash that has been funded into escrow pursuant to the terms of the Stipulation, and that numerous Settlement Class Members who or which submit acceptable Claim Forms will benefit from the Settlement that occurred because of the efforts of Lead Counsel;

(b) The fee sought by Lead Counsel has been reviewed and approved as reasonable by New Jersey, an institutional investor that oversaw the prosecution and resolution of the Action;

(c)     Copies of the Notice were mailed to over 266,700 potential Settlement Class Members and nominees stating that Lead Counsel would apply for attorneys' fees in an amount not exceed 16% of the Settlement Fund and reimbursement of Litigation Expenses in an amount not to exceed $600,000;

(d)     Lead Counsel has conducted the litigation and achieved the Settlement with skill, perseverance and diligent advocacy;

(e)     The Action raised a number of complex issues;

(f)     Had Lead Counsel not achieved the Settlement there would remain a significant risk that New Jersey and the other members of the Settlement Class may have recovered less or nothing from Defendants;

(g)     Plaintiff's Counsel devoted over 11,200 hours, with a lodestar value of approximately $6,006,000, to achieve the Settlement, which I find reasonable based on my oversight of the case and the work described in the Joint Declaration;

(h)     The requested fee of 16%, or $13,440,000, represents a multiplier on Plaintiff's Counsel's lodestar of 2.24, which is within the range of reasonableness given the facts and circumstances of this case;

(i)     The amount of attorneys' fees awarded and expenses to be reimbursed from the Settlement Fund are fair and reasonable and consistent with awards in similar cases; and

(j)     There was one objection to the requested attorneys' fees and expenses filed by Jeff M. Brown.  The Court has considered the objection filed by Mr. Brown and found it to be without merit, and it is hereby denied.

10.     New Jersey is hereby awarded $_____ from the Settlement Fund as reimbursement for its reasonable costs and expenses directly related to its representation of the Settlement Class.

11.     Any appeal or any challenge affecting this Court's approval regarding any attorneys' fees and expense application shall in no way disturb or affect the finality of the Judgment.

12.     Exclusive jurisdiction is hereby retained over the parties and the Settlement Class Members for all matters relating to this Action, including the administration, interpretation, effectuation or enforcement of the Stipulation and this Order.

13.     In the event that the Settlement is terminated or the Effective Date of the Settlement otherwise fails to occur, this Order shall be rendered null and void to the extent provided by the Stipulation.

14.     There is no just reason for delay in the entry of this Order, and immediate entry by the Clerk of the Court is expressly directed.

SO ORDERED this _____ day of _____, 2016.


_____
The Honorable Dan Aaron Polster
United States District Judge